**CITY OF PHILADELPHIA, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (HUNTER), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 3, 2006.
Decided Sept. 1, 2006.
Publication Ordered Dec. 7, 2006.

Martin G. Malloy, Philadelphia, for petitioner.

W. Michael Mulvey, Philadelphia, for respondent.

BEFORE: SMITH–RIBNER, Judge, and LEADBETTER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge LEADBETTER.

The City of Philadelphia (City) petitions for review of the order of the Workers' Compensation Appeal Board (Board), which affirmed the order of the Workers' Compensation Judge (WCJ) directing resumption of disability benefits that the City unilaterally ceased paying after the claimant began receipt of a service-connected disability pension and awarding a thirty percent penalty on the amount of the improperly withheld payments. We affirm in part, reverse in part and remand for further proceedings.

In October of 1994, the City acknowledged liability, in a Notice of Compensation Payable (NCP), for the injury sustained by Thomas Hunter while working for the City's police department. Following the injury, Hunter worked periodically in light-duty positions, without any loss of earnings (receiving either full pay or injured on duty benefits), until February of 1995, when he retired due to the injury and began receiving regular pension benefits as well as total disability benefits pursuant to the Workers' Compensation Act.[1] Hence, beginning in February of 1995, Hunter received a regular pension benefit payment of approximately $1,500.00 per month and a workers' compensation total disability benefit of $465.50 per week.[2] In August of 1998, the City granted Hunter's application, retroactive to February 7, 1995, for conversion of his regular pension to a service-connected disability pension, pursuant to which Hunter became entitled to an increased pension benefit in the amount of approximately $2,118.00 per month. The parties agree that, unlike a regular pension, retirees are not entitled to receive duplicate benefits from a service-connected disability pension and from workers' compensation disability. Beginning August 31, 1998, Hunter began receiving the service-connected disability pension benefit less $736.00, which the City withheld to offset previously paid workers' compensation benefits. Until October 24, 1998, Hunter also received his weekly workers' compensation payment. Thereafter, the City ceased payment of the workers' compensation benefit and Hunter received only the pension benefit as reduced by the offset.[3]

In December of 1998, Hunter petitioned for the imposition of a penalty pursuant to Section 435 of the Act, 77 P.S. § 991,[4]

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

2. After his retirement, Hunter petitioned for the reinstatement of workers' compensation benefits. This litigation ended following the entry of a stipulation establishing an Average Weekly Wage (AWW) slightly higher than that stated in the NCP and liability as of February

3, 1995 for total disability benefits based on the stipulated AWW.

3. After the offset, Hunter received $1,376.00 per month.

4. Section 435 was added by the Act of February 8, 1972, P.L. 25, *as amended.* In pertinent part, this section authorizes the imposition of penalties, as follows:

contending that the City violated the Act in unilaterally ceasing payments for which it remained obligated and failing to pay the fifteen percent attorney's fee associated with the workers' compensation benefit. The WCJ heard and credited live testimony from Hunter, and Nicole Thompson, an employee of CompServices, the third party administrator for the City's workers' compensation program. The WCJ also received and credited the deposition testimony of James Kidwell, the manager of the Pension Counsel Unit of the City's pension board. Thompson stated that no agreement or order directed the cessation of Hunter's workers' compensation benefits, but that she understood the service-connected disability to constitute payments in lieu of workers' compensation disability benefits. Kidwell explained that, generally, the pension board offsets the pension by the amount paid in workers' compensation benefits.

Based on this testimony, the WCJ concluded that service-connected disability pension payments were in lieu of workers' compensation benefits. The WCJ further concluded that Hunter could not receive duplicate benefits from each source and, pursuant to an agreement to that effect signed by Hunter when he converted to the service-connected disability pension, as well as the pension regulations, no violation of the Act occurred. Accordingly, the WCJ denied the request for penalties. Hunter appealed to the Board, which reversed and remanded for the imposition of an appropriate penalty.[5] The Board noted that prior to ceasing payment of workers' compensation disability benefits the City did not file a supplemental agreement or a notification of termination or suspension. In its decision of August 14, 2002, the Board concluded that the evidence did not establish whether the disability pension was funded primarily by employees or by the City. In view of this lack of evidence, the Board concluded that the WCJ erred in declaring the disability pension payments to be in lieu of workers' compensation benefits. The Board further opined that, while a claimant cannot receive duplicate benefits, the City violated the Act in failing to continue payments of workers' compensation disability benefits, which it could then offset by a reduction in the pension payment. The City petitioned for review in our court and, in October of 2002, we quashed this petition as interlocutory.

On remand, the WCJ noted that, as of the March 5, 2003–remand hearing, the

---

(d) The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure:

(i) Employers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable: Provided, however, That such penalty may be increased to fifty per centum in cases of unreasonable or excessive delays. Such penalty shall be payable to the same persons to whom compensation is payable.

(ii) Any penalty or interest provided for anywhere in this act shall not be considered as compensation for the purposes of any limitation on the total amount of compensation payable which is set forth in this act.

**5.** The Board affirmed the WCJ's denial of penalties based upon the failure to pay a fifteen percent attorney's fee because, despite the undisputed fact that the City had been paying a fifteen percent attorney's fee on the workers' compensation benefits paid through October of 1998, the record contained no evidence of an agreement for attorney's fees in that amount. However, the Board directed that on remand Hunter should be afforded the opportunity to submit a fee agreement for the WCJ's approval. On remand, the WCJ received the fee agreement entitling Hunter's counsel to fifteen percent of the workers' compensation disability benefit.

City had failed to resume workers' compensation payments as directed by the Board and awarded a thirty percent penalty on past due benefits. The City appealed to the Board. The Board rejected the City's contention that, inasmuch as Hunter had not suffered any monetary loss, the penalty award was excessive, stating that "this rationale does not furnish any grounds for Defendant's failure to follow the Act's formal procedures." *Hunter v. Philadelphia,* (No. A05–0309, filed August 26, 2005) Board's op. at 5–6. Accordingly, the Board affirmed. Thereafter, the City filed the present appeal.

On appeal, the City contends that the Board erred in failing to recognize the disability pension benefit as payment in lieu of workers' compensation disability benefits, and thus that the cessation of workers' compensation payments did not violate the Act so as to justify the award of penalties.[6] The City alternatively maintains that Hunter relinquished entitlement to workers' compensation payments when he signed the agreement for the receipt of the service-connected disability pension. The City further argues that even if the cessation of payments violated the Act, the award of penalties is unjustified in view of the fact that Hunter has suffered no economic loss, as it is undisputed that the City had the right to reduce Hunter's pension to the extent of worker's compensation benefits paid and the violation found by the Board lay in its taking the credit the other way around. Finally, the City argues that the Board erred in reinstating Hunter's workers' compensation benefits in the absence of a formal petition for reinstatement.[7]

■ Two recent cases of this court have dealt with the City's service-connected disability pension plan involved here, and its relationship to the City's obligation to pay benefits under the Act. In *Palmer v. Workers' Compensation Appeal Board (City of Philadelphia),* 850 A.2d 72 (Pa. Cmwlth.2004), our court affirmed the award of penalties under identical circumstances involving the City's unilateral cessation of workers' compensation benefits after a retired police officer began receipt of a service-connected disability pension. The *Palmer* court concluded that, "the Act does not require that a claimant suffer economic harm before penalties are imposed; instead, the Act permits the imposition of penalties to give the Board the power to assure compliance with the Act." *Id.* at 78. The court noted that, "the imposition of penalties under the Act is an issue independent from the merits of the claim." *Id.* In *Palmer,* the claimant signed an "Agreement Re: Workmen's Compensation" identical to that signed by Hunter in the present case. The court stated:

> The Agreement that Claimant entered into with the Pension Board states that any pension benefits paid to an individual will be offset by the amount of workers' compensation received by that individual, not that workers' compensation benefits will be terminated. In effect,

---

**6.** As noted above, where an employer violates the Act or the associated rules and regulations, the imposition of penalties is appropriate. *See* Section 435(d)(i) of the Act, 77 P.S. § 991(d)(i). *See also* Section 413(b), 77 P.S. § 774.1

**7.** In light of our disposition, we need not address this issue. However, as the WCJ pointed out, before the hearings occurred on remand, Hunter filed a Review Petition requesting reinstatement. WCJ Decision of January 18, 2005 at 4. We also note that the WCJ and the Board have the power to fashion appropriate orders regardless of the form of the petition before them. *See Westinghouse Elec. Corp./CBS v. Workers' Comp. Appeal Bd. (Burger),* 838 A.2d 831, 836 n. 15 (Pa.Cmwlth. 2003).

what the WCJ's order did was restore workers' compensation benefits, even though they could be offset by Claimant's pension benefits.

*Id.* at 78.

*Palmer* would be directly controlling here, except that in *Palmer* the City failed to preserve a challenge to the finding that it had violated the Act, and argued only that penalties were inappropriate where claimant suffered no economic loss, and that the Agreement permitted the setoff. In the present case, unlike in *Palmer,* the City has consistently argued that it did not violate the Act because its service-connected disability pension benefits constituted payments in lieu of workers' compensation. The WCJ in his first opinion agreed with this analysis, but was reversed by the Board, which therefore retroactively reinstated benefits and remanded for "an appropriate penalty." Board Opinion and Order of August 14, 2002 at 11. This conclusion was an important factor weighed by the WCJ on remand in fashioning the penalty award. However, this court in *Murphy v. Workers' Compensation Appeal Board (City of Philadelphia),* 871 A.2d 312 (Pa.Cmwlth.2005), concluded that the service-connected disability pension paid to a retired Philadelphia police officer *did* constitute payment in lieu of workers' compensation. In *Murphy,* the Director of Provider Relations for CompServices testified that when "an employee has a work-related injury and is not on IOD status or sick leave, [the City] makes workers' compensation payments, which it calls 'gap payments.' [He] explained that gap payments are 'payments paid to the individual while they are being processed by the Board of Pensions and Retirement for their service-connected disability pensions.' CompServices continues to make those payments until it receives written notice that service-connected disability benefits have been awarded. Those benefits are always awarded to a retroactive date. Because both the workers' compensation gap payments and the pension benefits are for injuries occurring on duty, CompServices deducts the workers' compensation payment from the pension award. [He explained that] 'literally the City has just taken money out of one side of its pockets and put it into the other side of its pockets.'" *Id.* at 316–17. The court deemed this testimony sufficient to support the finding that claimant's pension benefits, paid to her because her injury was work-related, were paid in lieu of workers' compensation and, therefore, ruled that a pension offset is proper. *Id.*

■ Thus, we agree with the City that the Board in this case erred in holding that Hunter's disability pension benefits were not paid in lieu of workers' compensation. That is not to say, however, that the WCJ erred in awarding penalties, nor that the Board erred in affirming that award. As the Board noted, on August 14, 2002, it ordered the City to reinstate benefits, yet those benefits remained unpaid as of the time of the hearings on remand in the spring of 2003. This amounts to a violation in and of itself. Moreover, "Defendant acknowledged that it 'failed to follow the Act's formal procedures,' but presented no justification for failing to do so, and no explanation at the hearings on remand for its failure to pay since the Board's Opinion and Order on August 14, 2002." Board Opinion of August 26, 2005 at 6–7. While the Board may originally have remanded for an award of penalties because it erroneously believed that the pension payments were not in lieu of compensation, these additional violations amply justified an award of penalties. That said, however, in light of the fact that extremely heavy penalties were awarded (30% of nearly five years' compensation benefits) based in substantial part on the

erroneous view that the original offset was improper, we will remand for further consideration of the amount of penalties. We stress that the WCJ need not change the amount of the award, only that he may do so if in the further exercise of his discretion he deems it appropriate.

Accordingly, we affirm in part, reverse in part and remand for further proceedings before the WCJ.

### ORDER

AND NOW, this 1st day of September, 2006, the order of the Workers' Compensation Appeal Board in the above captioned matter is hereby AFFIRMED IN PART, REVERSED IN PART and REMANDED for additional proceedings before the Workers' Compensation Judge in accord with the foregoing opinion.

Jurisdiction relinquished.