CITY OF PHILADELPHIA, Petitioner

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (CALDERAZ-
ZO), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 31, 2008.

Decided March 27, 2009.

Martin G. Malloy, Philadelphia, for petitioner.

W. Michael Mulvey, Philadelphia, for respondent.

BEFORE: LEADBETTER, President Judge, and COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

City of Philadelphia (Employer) petitions for review of two orders of the Workers' Compensation Appeal Board (Board). Employer first petitions for review of the December 29, 2005 order of the Board, which: (1) reversed the Workers' Compensation Judge's (WCJ) decision and order granting Employer an offset/credit for service-connected disability pension benefits paid to Joanne Calderazzo (Claimant); (2) affirmed, in part, the WCJ's decision and order granting Claimant an award of penalties and remanded the matter for the WCJ to reconsider the amount of the penalty award; and (3) reversed the WCJ's decision and order denying Claimant's counsel unreasonable contest attorney's fees and remanded the matter for an order awarding such fees. Employer also petitions for review of the April 22, 2008 order of the Board, which affirmed the WCJ's decision and order on remand assessing penalties against Employer and awarding Claimant's counsel unreasonable contest attorney's fees. At issue in this case is: (1) whether Employer is entitled to an offset/credit against workers' compensation benefits for service-connected disability pension benefits paid to Claimant where Claimant's injury occurred prior to when the amendments to Section 204(a) of the Workers' Com-

pensation Act (Act)[1] were required to be applied; (2) whether Employer is subject to penalties for suspending Claimant's workers' compensation benefits without following the proper procedures; and (3) whether Claimant's counsel is entitled to unreasonable contest attorney's fees.

## I. Facts and Procedural Posture

On December 30, 1995, while working as a police officer for Employer, Claimant sustained injuries to her shoulder, neck, arm, hand, leg, and buttocks as a result of a motor vehicle accident. Claimant's injuries affected her ability to work. Employer acknowledged liability for Claimant's

injuries, and Claimant received temporary total disability benefits at the rate of $497.68 per week, with 15 percent of that amount going to pay her attorney's fees.

On February 15, 1998, Claimant was separated from her employment for reasons related to her work injuries. Thereafter, Claimant applied for service-connected disability pension benefits. As part of the application process, Claimant signed a document entitled "Agreement re: Workmen's Compensation" (Pension Agreement), which discussed the interplay between workers' compensation benefits and service-connected disability pension benefits paid or payable to Claimant.[2] In

---

1. Act of June 2, 1915, P.L. 736, *as amended* by the Act of June 24, 1996, P.L. 350 (Act 57), 77 P.S. § 71(a).

2. Specifically, the Pension Agreement provides as follows:

> Agreement entered into the 27th day of March, 1998 between Joanne Calderazzo, hereinafter referred to as "applicant" and the Board of Pensions and Retirement of the City of Philadelphia, hereinafter referred to as "board".
>
> WHEREAS, applicant has applied to Board for service-connected disability retirement benefits by reason of disability sustained by applicant ..., and
>
> WHEREAS, under the Retirement System Ordinance of December 3, 1956 ... under which I am entitled to retire or receive survivorship benefits, it is provided that the Board shall deduct from such retirement or survivorship benefits the amount of any Workmen's Compensation benefits which I may receive or to which I may become entitled, and
>
> WHEREAS, no application for such Workmen's Compensation benefits has been filed by me or no award of such benefits has been made to me, or having received an award, the said award has been suspended, and
>
> WHEREAS, I am desirous of receiving the full amount of the retirement or survivorship benefits provided by the Retirement System Ordinance immediately without awaiting determination of any application

for and without deduction for Workmen's Compensation benefits.

NOW, THEREFORE, in consideration of the following and intending to be legally bound hereby it is agreed as follows:

1. The Board shall pay to applicant the full amount of retirement or survivorship benefits.

2. In the event any Workmen's Compensation benefits *(other than medical services and funeral benefits)* should be awarded to applicant then the benefits previously paid to applicant or applied on his behalf under the Retirement System Ordinance aforesaid shall be considered and determined to be payments of Workmen's Compensation as set forth in Secs. 206.3 and 209.5 of the said Ordinance. The City of Philadelphia shall be entitled to credits for such payments against any award of such Workmen's Compensation benefits for the period during which such retirement benefits have been paid or applied to the extent of Workmen's Compensation payments payable to applicant but not in excess of the benefits actually paid under Secs. 206 or 209 of the said ordinance.

3. Thereafter there shall be deducted from such retirement or survivorship benefits payable to me the amount of Workmen's Compensation benefits paid or payable to me as provided by Secs. 206.3 and 209.5 of the said ordinance.

4. Where the City of Philadelphia shall be entitled to subrogation under the Workmen's Compensation Act, payments made

August of 2000, Employer's Board of Pensions and Retirement (Board of Pensions) awarded Claimant service-connected disability pension benefits with regard to the same injury for which Claimant was receiving workers' compensation benefits. The Board of Pensions made Claimant's service-connected disability pension benefits retroactive to the date of her separation from her employment. Claimant receives $2,205.93 per month, or $509.06 per week, in pension benefits. After Claimant was awarded pension benefits, Employer ceased paying workers' compensation benefits to Claimant.

On September 19, 2000, Claimant filed a Reinstatement Petition and a Petition for Penalties (Penalty Petition I), alleging that Employer violated the Act by unilaterally ceasing to pay her workers' compensation benefits, and that she was entitled to a reinstatement of such benefits. On August 26, 2002, Claimant filed a second Petition for Penalties (Penalty Petition II; with Penalty Petition I, Penalty Petitions), alleging that Employer had violated the Act by failing to reimburse her for work-related prescription expenses. Employer filed responsive answers denying the allegations contained in Claimant's Reinstatement Petition and Penalty Petitions. The Reinstatement Petition and Penalty Petitions were subsequently consolidated and assigned to a WCJ for disposition.

The WCJ held several hearings at which the parties were given the opportunity to present evidence in support of, or in opposition to, Claimant's Reinstatement Petition and Penalty Petitions. Claimant introduced her own deposition testimony.

Claimant testified as to her initial receipt of workers' compensation benefits and the circumstances which later led to her receipt of service-connected disability pension benefits. Employer presented the deposition testimony of James Kidwell, Deputy Director of the Board of Pensions. Mr. Kidwell testified about Claimant's service-connected disability pension benefits. Employer also introduced into evidence the Pension Agreement.

Following the hearings, the WCJ issued a decision and order. The WCJ accepted Mr. Kidwell's testimony as credible and rejected Claimant's testimony to the extent that it conflicted with Mr. Kidwell's testimony. The WCJ concluded that Employer was entitled to an offset/credit of Claimant's workers' compensation benefits against her service-connected disability pension benefits pursuant to the Pension Agreement. (WCJ Decision, Conclusions of Law (COL) ¶ 3, December 24, 2003.) The WCJ also concluded that Claimant was not entitled to a reinstatement of her workers' compensation benefits because she had agreed to a suspension of such benefits in the Pension Agreement. (COL ¶¶ 5–6.) The WCJ further concluded that Employer violated the Act by failing to file the Pension Agreement with the Bureau of Workers' Compensation (Bureau), and as a result, the WCJ assessed Employer a penalty of 20 percent of Claimant's workers' compensation benefits for the period from February 18, 1998 to March 27, 1998. (COL ¶ 7.) Finally, the WCJ concluded that it was reasonable for Employer to contest Claimant's Reinstatement Petition

by the Board under this agreement shall be considered as Workmen's Compensation as set forth in Paragraph 2 above.

5. Applicant shall not be required to make application for or prosecute any application already made for Workmen's Compensation benefits as a condition of receiving the full amount of survivorship benefits payable, nor shall it prevent or affect the right of applicant to make or prosecute such application.

(Pension Agreement, Kidwell Dep. Ex. No. 2 (underlining indicating hand-written items).)

and Penalty Petitions. (COL ¶ 8.) Accordingly, the WCJ denied Claimant's Reinstatement Petition, but granted, in part, her Penalty Petitions.

Claimant and Employer both appealed the WCJ's decision and order to the Board. The Board issued an opinion and order on December 29, 2005, in which it concluded that the WCJ did not err in determining that Employer had violated the Act and was subject to penalties. (Board Op. at 5.) However, the Board concluded that the WCJ did err in determining that Claimant had agreed to a suspension of her workers' compensation benefits by signing the Pension Agreement. (Board Op. at 5.) For this reason, the Board further concluded that the WCJ had improperly based the penalty award on Employer's actions in failing to file the Pension Agreement with the Bureau and had not considered that Employer violated the Act by failing to enter into a supplemental agreement or obtain an appropriate order to suspend Claimant's benefits. (Board Op. at 5–6.) Thus, the Board affirmed, in part, the WCJ's decision and order granting, in part, Claimant's Penalty Petitions, but remanded the matter for the WCJ to reconsider the amount of the penalty award. (Board Op. at 5–6.) Moreover, the Board concluded that the WCJ erred in granting Employer an offset/credit and in failing to reinstate Claimant's workers' compensation benefits. (Board Op at 10–11.) In this regard, the Board determined that the service-connected disability pension benefits paid to Claimant were payments in lieu of workers' compensation. (Board Op. at 11.) However, the Board determined that Employer failed to meet its burden of presenting evidence to establish the extent that it funded the pension plan. (Board Op. at 11.) The Board noted that, while "Mr. Kidwell testified at first that the pension plan was 100% funded by [Employer], [he] later acknowledged on cross examination that the pension plan receives state funding," which means that the pension plan was not fully funded by Employer. (Board Op. at 11–12.) The Board, thus, determined that "[b]ecause [Employer] did not establish the extent to which it may be entitled to an offset against Claimant's workers' compensation benefits, Claimant's right to continuing workers' compensation benefits remains unchanged." (Board Op. at 12.) Therefore, the Board reversed the WCJ's decision and order denying Claimant's Reinstatement Petition. Additionally, the Board concluded that the WCJ erred in determining that Employer's contest was reasonable. (Board Op. at 13.) Consequently, the Board also remanded the matter for the WCJ to award unreasonable contest attorney's fees.

Employer subsequently filed a Petition for Review of the Board's opinion and order with this Court. By order dated February 13, 2006, this Court quashed Employer's Petition for Review, concluding that the Board's order was interlocutory and not immediately appealable. *City of Philadelphia v. Workers' Compensation Appeal Board (Calderazzo)* (No. 176 C.D. 2006, filed February 13, 2006).

█ A remand hearing was held before a WCJ on January 4, 2007. On June 29, 2007, the WCJ issued a decision and order on remand. The WCJ assessed against Employer a 35 percent penalty on wage loss benefits due in the period from February 18, 1998 through March 27, 1998. (WCJ Decision, Conclusions of Law (COL) ¶ 2, June 29, 2007.) The WCJ also awarded unreasonable contest attorney's fees to Claimant's counsel in the amount of $2,922.50. (COL ¶ 3.) Employer appealed the WCJ's decision and order on remand to the Board, which affirmed by order dated April 22, 2008. Employer now peti-

tions this Court for review of the Board's December 29, 2005 and April 22, 2008 orders.[3]

## II. Discussion

■ Before this Court, Employer argues that: (1) the Board erred in denying it an offset/credit for the service-connected disability pension benefits paid to Claimant; (2) the WCJ and the Board erred in assessing penalties against Employer; and (3) the WCJ and the Board erred in awarding unreasonable contest attorney's fees to Claimant's counsel.[4]

### A. Pension Offset/Credit

■ Employer first argues that the Board erred in denying Employer an off-set/credit for the service-connected disability pension benefits that were paid to Claimant. Employer contends that it is entitled to an offset/credit because it satisfied its burden of proving that the service-connected disability pension benefits paid to Claimant were payments in lieu of workers' compensation. We agree.

In 1996, the General Assembly, through Act 57, amended Section 204(a) of the Act to specifically allow an employer to take an offset/credit against a workers' compensation award for pension benefits paid to a claimant "to the extent funded by the employer directly liable for the payment of compensation." Section 3 of Act 57. Section 32.1(a) of Act 57 provides that "[t]he amendment ... of section[ ] 204(a) ...

---

3. Our review in a workers' compensation case is "limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were supported by substantial evidence." *Palmer v. Workers' Compensation Appeal Board (City of Philadelphia)*, 850 A.2d 72, 76 n. 8 (Pa.Cmwlth.2004).

4. Employer sets out five questions in its Statement of Questions Involved: (1) "Whether the [Board] erred in reversing and remanding the December 24, 2003 decision of the [WCJ] where the [WCJ's] decision was supported by substantial competent evidence and was a reasoned decision"; (2) "Whether the [Board] erred in affirming the June 29, 2007 decision of the [WCJ] where the [WCJ's] decision was not supported by substantial competent evidence and was not a reasoned decision"; (3) "Whether the [Board] erred in reversing and remanding the December 24, 2003 decision and affirming the June 29, 2007 decision of the [WCJ] where the [Board] failed to rely upon this honorable Court's holding in [*City of Philadelphia v. Workers' Compensation Appeal Board (Hunter)*, 912 A.2d 889 (Pa. Cmwlth.2006)] as well as this honorable Court's recent holding in *City of Philadelphia v. WCAB (Andrews)*, 948 A.2d 221 (Pa. Cmwlth.2008) wherein the Court has held service-connected disability pension payments represent payments in lieu of workers' compensation benefits"; (4) "Whether the [Board] erred in affirming the December 24, 2003 decision and the June 29, 2007 decision of the [WCJs] where the [WCJs] erred in awarding penalties"; and (5) "Whether the [Board] erred in affirming the June 29, 2007 decision of the [WCJ] where the [WCJ] erred in awarding unreasonable contest attorney's fees." (Employer's Br. 4–5.) However, questions 1 & 2 are not addressed at all in the Argument section of Employer's brief. We note that Pennsylvania Rule of Appellate Procedure 2119(a) requires that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Here, Employer did not comply with the rule. Instead, Employer listed three questions (1, 2, & 3) together as headings in one part of its Argument and failed to address two of the questions (1 & 2) at all in the brief. In so far as Employer has not developed two of the questions in its brief, they have been waived. *See American Rock Mechanics, Inc. v. Workers' Compensation Appeal Board (Bik and Lehigh Concrete Technologies)*, 881 A.2d 54, 56 (Pa.Cmwlth.2005) (concluding that the petitioner waived arguments that it raised in its statement of questions presented, but which it failed to properly develop in the argument portion of its brief).

shall apply only to claims for injuries which are suffered on or after the effective date of this section." According to Section 33(1)(iii) of Act 57, Section 32.1 of Act 57 became effective immediately upon enactment, which occurred on June 24, 1996.[5]

Prior to the amendments to Section 204(a), employers were allowed to take an offset/credit for pension benefits, as long as those benefits were paid in lieu of workers' compensation, and were not in the nature of deferred compensation. *E.g., Toborkey v. Workmen's Compensation Appeal Board (H.J.Heinz),* 655 A.2d 636 (Pa. Cmwlth.1995) (denying the employer an offset/credit where pension benefits were in the nature of deferred compensation, and not in lieu of workers' compensation); *Murhon v. Workmen's Compensation Appeal Board (Kawecki Berylco, Inc.),* 152 Pa.Cmwlth. 229, 618 A.2d 1178, 1181–82 (1992) (allowing the employer an offset/credit where disability pension benefits were paid in lieu of workers' compensation). In cases such as this one, where a claimant's injuries occurred prior to the effective date of Act 57, our precedent predating the amendments to Section 204(a) remains controlling. *City of Philadelphia v. Workers' Compensation Appeal Board (Andrews),* 948 A.2d 221, 227 (Pa. Cmwlth.2008) (declining to apply cases utilizing the in lieu of compensation standard to an injury that occurred after the effective date of Act 57 and stating that "[t]he scope of those cases . . . is limited to matters wherein the claimant was injured prior to the effective date of Act 57"); *see also Murphy v. Workers' Compensation Appeal Board (City of Philadelphia),* 871 A.2d 312, 316–17 (Pa.Cmwlth.2005) (holding that a pension offset/credit was proper where pension benefits were paid in lieu of workers' compensation for an injury occurring prior to the effective date of Act 57).

We have explained the test for determining whether an employer is entitled to an offset/credit where a claimant's injury occurred prior to the effective date of Act 57 as follows:

The test for whether pension benefits may be offset against workers' compensation benefits depends upon whether the pension payments were made as a result of the claimant's inability to work. If payments are made only due to an accrued entitlement built up as a result of the claimant's employment, such as wages, no offset is permitted. If, however, the payments are made in lieu of workers' compensation, the employer is entitled to the offset.

*Murphy,* 871 A.2d at 316 (citations omitted). Moreover, we have explained the application of this test as follows:

We distinguished between pension payments that are in lieu of workers' compensation and those that are in the nature of deferred compensation in *Toborkey.* . . . There, the employer's retirement plan offered a disability pension if the employee had at least ten years of service with employer and was totally disabled, irrespective of the cause of the disability. For the first two to three years employees contributed to the pension fund but, thereafter, it was entirely employer funded in accordance with the provisions of the collective bargaining agreement. In addition, payments were calculated based on years of service. In that situation, we concluded that the pension payments were not in lieu of workers' compensation but, rath-

---

**5.** We note, however, that pursuant to Section 33(2) of Act 57, the amendments to Section 204(a), as well as numerous other portions of Act 57, became effective 60 days from June 24, 1996. For purposes of this opinion, when we refer to the effective date of Act 57, we are referring to June 24, 1996.

er, were in the nature of deferred compensation for work previously performed and, therefore, employer was not entitled to a pension offset. We reached the same result in *Bethlehem Steel [Corp. v. Workers' Compensation Appeal Board (Gounaris),* 714 A.2d 550 (Pa.Cmwlth. 1998)]. There, the pension provision specifically provided that workers' compensation benefits could not be deducted from disability pension payments prior to the time the claimant reached 65 years of age. We, thus, concluded that the payments were in the nature of wages for work performed and did not allow an offset.

The language in a pension agreement can also be determinative. For example, in *Allegheny Ludlum, Inc. v. Workmen's Compensation Appeal Bd. (Pavlik),* 141 Pa.Cmwlth. 219, 595 A.2d 680 (1991), the pension agreement at issue specifically provided that "any amount paid to ... any participant on account of injury or occupational disease incurred in the course of his employment ... shall be deducted from or charged against the amount [of pension]...." *Id.* at 684 (emphasis removed from original.) From this language, we concluded that the pension payments were in lieu of compensation and, therefore, permitted the offset.

*Murphy,* 871 A.2d at 316.

Here, the pension benefits paid to Claimant were for the same injury for which she was receiving workers' compensation. (*See* Kidwell Dep. at 15.) Unlike in *Toborkey,* Claimant's receipt of pension benefits was not conditioned upon her years of service. (*See* Kidwell Dep. at 5–7.) Moreover, similar to *Allegheny Ludlum,* the Pension Agreement in this case contains express language indicating that the pension will be reduced by any workers' compensation benefits that are received: "there shall be deducted from such retirement or survivorship benefits payable to me the amount of Workmen's Compensation benefits paid or payable to me...." (Pension Agreement ¶ 3, Kidwell Dep. Ex. No. 2.) Further, unlike in *Bethlehem Steel,* the Pension Agreement in this case is silent on whether Claimant is required to have reached a certain age before Employer may start deducting for the workers' compensation benefits that were paid to Claimant, thus allowing for the conclusion that Employer may start deducting immediately. (*See* Pension Agreement, Kidwell Dep. Ex. No. 2.) Given these circumstances, we believe that the pension benefits paid to Claimant were not in the nature of wages or deferred compensation but, rather, were in lieu of workers' compensation. Therefore, pursuant to our precedent involving injuries that occurred prior to the effective date of Act 57, Employer is entitled to an offset/credit for the service-connected disability pension benefits paid to Claimant.

■ We must now consider the amount of the offset/credit to which Employer is entitled. Even before the amendments to Section 204(a), this Court limited the amount of the offset/credit to which an employer was entitled based on how much of the benefits were paid for by the employer. For instance, in *School District of Philadelphia v. Workmen's Compensation Appeal Board (March),* 109 Pa.Cmwlth. 463, 531 A.2d 547 (1987), *disapproved on other grounds by, Hastings Indus. v. Workmen's Compensation Appeal Board,* 531 Pa. 186, 611 A.2d 1187 (1992), we only allowed the employer to take a 50 percent offset/credit where the employer only paid for 50 percent of the benefits. *March,* 531 A.2d at 551. However, in *Murhon,* we allowed the employer to take a 100 percent offset/credit where the employer paid for

100 percent of the benefits. *Murhon*, 618 A.2d at 1182.

In the present case, the WCJ found that Employer funded 100 percent of Claimant's service-connected disability pension benefits. (WCJ Decision, Findings of Fact (FOF) ¶¶ 2(j), 3, December 24, 2003.) The WCJ based this finding on Mr. Kidwell's testimony, which was accepted as credible. Mr. Kidwell testified on direct examination that Claimant was receiving pension benefits under Pension Plan B, which "automatically provided [Claimant] a refund of [her] pension contributions." (Kidwell Dep. at 13.) Mr. Kidwell also testified that "[i]n light of the fact that [Claimant] received a refund of her contributions, the pension would be funded one hundred percent by [Employer]." (Kidwell Dep. at 14.) However, on cross-examination, Mr. Kidwell acknowledged that the retirement booklet that Employer uses indicates that the pension fund from which pension benefits are drawn is funded by "employees, [Employer], the state, and a return on investments." (Kidwell Dep. at 18.) Mr. Kidwell testified that employees are required to contribute a certain percentage of their paychecks, usually five or six percent, to the pension fund. (Kidwell Dep. at 19–20.) Mr. Kidwell also testified that it was his understanding that the state provides some general aid to Employer to use at its discretion to fund pension benefits or for other purposes, but that he did not know whether the state provides any aid to fund pension benefits for police officers. (Kidwell Dep. at 18–20.) Upon further questioning, Mr. Kidwell testified that Employer's funding of the pension fund is governed by the Municipal Pension Plan Funding Standard and Recovery Act (Act 205).[6] (Kidwell Dep. at 25.) Mr. Kidwell explained that "[t]here is an actuarial evaluation conducted each year," and "[b]ased on the actuary's evaluation, the actuary would recommend to the [Board of Pensions] what [Employer's] contributions would be for that fiscal year." (Kidwell Dep. at 24–25.) Mr. Kidwell further explained that "the [Board of Pensions] would ... basically ... adopt the findings of the actuary and that evaluation would determine [Employer's] contributions." (Kidwell Dep. at 25.) Finally, Mr. Kidwell testified that, "[t]o the best of [his] knowledge, [Employer has] not ever paid less than the amount required ... based on the actuarial evaluation." (Kidwell Dep. at 27.)

As the Board correctly recognized, Mr. Kidwell's testimony, on cross-examination, contradicts his testimony on direct that Claimant's pension benefits were funded 100 percent by Employer since Claimant's contributions were returned to her. That is, according to Mr. Kidwell's cross-examination testimony, the pension fund from which Claimant's pension benefits are drawn is funded by employees, returns on investments, and, possibly, the state, in addition to Employer. Thus, it is clear that even though Claimant's contributions to the pension fund were returned, her pension benefits were not funded 100 percent by Employer. Nevertheless, there is no question from the record that Employer did contribute some amount of money to the pension fund each year based on an actuarial evaluation. Under these circumstances, we believe that the Board abused its discretion by denying Employer any offset/credit. The Board should have remanded this matter back to the WCJ for the purposes of receiving actuarial testimony regarding Employer's contributions to

---

6. Act of December 18, 1984, P.L. 1005, No. 205, *as amended*, 53 P.S. §§ 895.101– 895.1001.

Pension Plan B during the years relevant to this matter and rendering a determination as to the amount of the offset to which Employer is entitled. *See City of Philadelphia v. Workers' Compensation Appeal Board (Grevy)*, 968 A.2d 830, 2009 WL 791280 (Pa.Cmwlth.2009) (concluding that the Board acted properly in awarding Employer an offset/credit and in remanding the matter back to the WCJ to render a determination as to the extent of the offset/credit to which Employer was entitled where Employer established that it contributed some amount of money to the pension fund each year based on an actuarial evaluation, but did not establish what amounts were contributed to the pension plan of which the claimant was a member for the years in question.) If the Board's decision were allowed to stand, Employer would be required to compensate Claimant twice for the same injuries, and Claimant would receive a double recovery; this result is unacceptable. *See Allegheny Ludlum*, 595 A.2d at 684 (recognizing that failure to award an offset/credit for pension benefits paid in lieu of workers' compensation would require the employer to "pay twice for the same disability . . . and [would result] in unjust enrichment of [the c]laimant").

### B. Penalty

■ Employer next argues that the WCJ and the Board erred in assessing penalties against Employer. Employer contends that Claimant timely received all of the money that she was owed during the period for which penalties were awarded through Employer's payment of her service-connected disability pension benefits and that, therefore, no penalties were warranted. We disagree.

Section 435(d)(i) of the Act[7] provides:

(d) The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure:

(i) Employers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable: Provided, however, That such penalty may be increased to fifty per centum in cases of unreasonable or excessive delays. Such penalty shall be payable to the same persons to whom the compensation is payable.

77 P.S. § 991(d)(i). We have previously stated that "[t]he imposition of a penalty and the amount of the penalty to be imposed are left to the sound discretion of the WCJ; therefore, the WCJ's decision to impose a penalty will not be overturned on appeal absent an abuse of discretion." *McLaughlin v. Workers' Compensation Appeal Board (St. Francis Country House)*, 808 A.2d 285, 288 (Pa.Cmwlth. 2002).

Here, Employer was assessed a penalty because it suspended Claimant's workers' compensation benefits without following the proper procedures. Section 413(b) of the Act[8] provides that:

Any insurer who suspends, terminates or decreases payments of compensation without submitting an agreement or supplemental agreement therefore as provided in Section 408, or a final receipt as provided in Section 434, or without filing a petition and either alleging that the employe has returned to work at his prior or increased earnings or

---

7. Added by Section 3 of the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. § 991(d)(i).

8. Added by Section 3 of the Act of February 8, 1972, P.L. 25, *as amended* 77 P.S. § 774.1.

where the petition alleges that the employee has fully recovered and is accompanied by an affidavit of a physician on a form prescribed by the department to that effect which is based upon an examination made within twenty-one days of the filing of the petition or having requested and been granted a supersedeas as provided in this section, shall be subject to penalty as provided in section 435.

77 P.S. § 774.1. Thus, according to Section 413(b), an employer's unilateral suspension of benefits clearly warrants the imposition of penalties under Section 435.

While Employer does not dispute that it ceased paying workers' compensation benefits to claimant, it essentially asserts that it was allowed to take such action based on its entitlement to an offset/credit for the service-connected disability pension benefits paid to Claimant. We recently addressed this same argument from Employer in *City of Philadelphia v. Workers' Compensation Appeal Board (Hunter)*, 912 A.2d 889 (Pa.Cmwlth.2006). In that case, which also involved an injury that occurred prior to the effective date of Act 57, we agreed with Employer that the Board erred in holding that the claimant's service-connected disability pension benefits were not in lieu of workers' compensation. *Id.* at 893. However, we disagreed with Employer that the Board erred in affirming the WCJ's award of penalties. *Id.* We determined that Employer had violated the Act by failing to follow the Act's formal procedures for suspending benefits and by failing to comply with an order of the Board to reinstate benefits. *Id.* Thus, we affirmed the award of penal-

ties, but we remanded the matter to give the WCJ the opportunity to reconsider the amount of the penalty "in light of the fact that extremely heavy penalties were awarded (30% of nearly five years' compensation benefits) based in substantial part on the erroneous view that the original offset was improper." *Id.* at 893–94. Further, "[w]e stress[ed] that the WCJ need not change the amount of the award, only that he may do so if in the further exercise of his discretion he deems it appropriate." *Id.* at 894.

We believe that *Hunter* is controlling in this case. Like in *Hunter*, Employer unilaterally suspended Claimant's workers' compensation benefits without following the proper procedures. Thus, Employer clearly violated the terms of Section 413(b) of the Act. Because Employer failed to follow the proper procedures for suspending Claimant's benefits in violation of Section 413(b), Employer is subject to penalties under Section 435(d)(i). *See* 77 P.S. § 774.1; 77 P.S. § 991(d)(i);[9] *Hunter*, 912 A.2d at 893. Therefore, we conclude that the WCJ did not err in assessing a penalty against Employer and that the Board did not err in affirming the imposition of a penalty.

### C. Unreasonable Contest Attorney's Fees

Finally, Employer argues that the Board erred in affirming the WCJ's order imposing unreasonable contest attorney's fees. Employer contends that, because the Board erred in determining that Employer was not entitled to an offset/credit, Employer's contest was reasonable.[10] We agree with Employer, but only in part.

---

9. We note that these statutory provisions were in effect, in their current form, at the time Employer unilaterally suspended Claimant's workers' compensation benefits and at all times thereafter. We also note that the appli-

cation of these statutory provisions is not limited to injuries occurring on or after the effective date of Act 57.

10. Employer also contends that Claimant did not request unreasonable contest attorney's

Section 440(a) of the Act[11] provides, in pertinent part, that:

> In any contested case where the insurer has contested liability in whole or in part, ... the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

77 P.S. § 996(a). The burden is on the employer to establish that it had a reasonable basis for contesting liability. *Frankford Hosp. v. Workers' Compensation Appeal Board (Walsh)*, 906 A.2d 651, 656 (Pa.Cmwlth.2006).

Here, as discussed above, Employer successfully proved that it is entitled to an offset/credit for service-connected disability pension benefits paid to Claimant in lieu of workers' compensation. Because Employer is entitled to an offset/credit, we agree with Employer that it had a reasonable basis for contesting Claimant's Reinstatement Petition.

However, as was also discussed above, Employer unilaterally suspended Claimant's workers' compensation benefits without following the proper procedures, which was a clear violation of Section 413(b) of the Act. Further, Employer was placed on notice by the plain language of Section 413(b) that if it suspended Claimant's workers' compensation benefits without following the procedures listed therein, it would be subject to penalties under Section 435. Thus, we do not believe that Employer had a reasonable basis for contesting Claimant's Penalty Petitions.

Therefore, we conclude that the WCJ erred in awarding, and the Board erred in affirming, unreasonable contest attorney's fees to Claimant's counsel with regard to Employer's contest of Claimant's Reinstatement Petition. However, we conclude that the WCJ did not err in awarding, and the Board did not err in affirming, unrea-

---

fees before the WCJ and that the Board should not have raised the issue *sua sponte.* However, contrary to Employer's argument, Claimant specifically requested unreasonable contest attorney's fees in her Penalty Petitions, which were initially before the WCJ for disposition. (*See* Penalty Petition I ¶ 1, September 19, 2000 (stating that "[t]he purpose of this Petition is to request reinstatement of benefits to assess a penalty against the City for the unilateral termination of benefits and to award unreasonable contest [fees]"); Penalty Petition II ¶ 1, August 26, 2002 (stating that "[t]he employer should be penalized, and an unreasonable contest should be asserted").) Additionally, Claimant properly raised a challenge to the WCJ's failure to issue unreasonable contest attorney's fees in her appeal to the Board. (Claimant's Appeal from WCJ's December 24, 2003 Decision ¶ 6.) Thus, Employer's contention is without merit.

Employer further contends that the only costs submitted into the record were in relation to an earlier Petition to Terminate Benefits. However, at the remand hearing held on January 4, 2007, Claimant's counsel introduced into evidence litigation expenses for the deposition of Claimant taken on May 30, 2002, and the deposition of Mr. Kidwell taken on October 1, 2002. (Litigation Expenses, Claimant's Remand Ex. No. 1.) These depositions were conducted with regard to Claimant's Reinstatement Petition and Penalty Petitions. Claimant's counsel also introduced a bill for services rendered, which pertained, at least in part, to Claimant's Reinstatement and Penalty Petitions. (Bill for Services Rendered, Claimant's Remand Ex. No. 2.) Thus, Employer's contention is again without merit.

11. Added by Section 3 of the Act of February 8, 1972, P.L. 25, *as amended,* 77 P.S. § 996(a).

sonable contest attorney's fees to Claimant's counsel with regard to Employer's contest of Claimant's Penalty Petitions.

### III. Conclusion

Accordingly, we reverse the Board's December 29, 2005 order denying Employer an offset/credit for the service-connected disability pension benefits paid to Claimant, and we direct the Board to remand this matter for the WCJ to receive actuarial testimony regarding Employer's contributions to Pension Plan B during the relevant years and render a determination as to the amount of the offset/credit to which Employer is entitled.[12] Moreover, we affirm the Board's April 22, 2008 order to the extent that it affirmed the WCJ's decision and order on remand assessing a penalty against Employer for unilaterally suspending Claimant's workers' compensation benefits. However, since the amount of the penalty assessed may have been influenced by the Board's incorrect conclusion that Employer was not entitled to any offset/credit, the Board shall remand the matter to the WCJ to give the WCJ the opportunity to reconsider the amount of the penalty. As we did in *Hunter*, we again stress that the WCJ is not required to change the amount of the penalty but, rather, may do so if such a change is determined to be appropriate. Furthermore, the Board's April 22, 2008 order is affirmed to the extent that it affirmed the WCJ's decision and order on remand awarding unreasonable contest attorney's fees to Claimant's counsel for Employer's

contest of Claimant's Penalty Petitions; however, it is reversed to the extent that it affirmed the WCJ's award of unreasonable contest attorney's fees for Employer's contest of Claimant's Reinstatement Petition. Therefore, the Board shall also remand the matter for the WCJ to recalculate the amount of unreasonable contest attorney's fees to which Claimant's counsel is entitled in light of our opinion.

### ORDER

**NOW,** March 27, 2009, the December 29, 2005 order of the Workers' Compensation Appeal Board (Board) denying the City of Philadelphia (Employer) an offset/credit for pension benefits paid to Joanne Calderazzo (Claimant) in lieu of workers' compensation is reversed, and we direct the Board to remand this matter to the WCJ to receive actuarial testimony regarding Employer's contributions to Pension Plan B during the relevant years and render a determination as to the amount of the offset/credit to which Employer is entitled. The April 22, 2008 order of the Board is affirmed to the extent that it affirmed the WCJ's decision and order on remand assessing a penalty against Employer for unilaterally suspending Claimant's benefits. However, since the amount of the penalty assessed may have been influenced by the Board's incorrect conclusion that Employer was not entitled to any offset/credit, the Board shall remand this matter to the WCJ to give the WCJ the opportunity to reconsider the amount of

---

12. We note that in *Township of Lower Merion v. Workers' Compensation Appeal Board (Tansey)*, 783 A.2d 878, 881–82 (Pa.Cmwlth.2001), this Court held that contributions made by the Commonwealth under Act 205 that are specifically designated to be used for pension benefits never become a municipality's money and, thus, may not be considered as part of the municipality's contributions for offset/credit purposes. Although *Tansey* involves an injury that occurred after the effective date of Act 57, we believe that its holding is also applicable to the present matter. Therefore, in determining the amount of the offset to which Employer is entitled, the WCJ should not treat any contributions made by the Commonwealth under Act 205 that were specifically designated for pension benefits as part of Employer's contributions.

the penalty. The WCJ is not required to change the amount of the penalty but, rather, may do so if such a change is determined to be appropriate. Furthermore, the April 22, 2008 order of the Board is affirmed to the extent that it affirmed the WCJ's decision and order on remand awarding unreasonable contest attorney's fees to Claimant's counsel for Employer's contest of Claimant's Penalty Petitions; however, it is reversed to the extent that it affirmed the WCJ's award of unreasonable contest attorney's fees for Employer's contest of Claimant's Reinstatement Petition. Therefore, the Board shall also remand the matter for the WCJ to recalculate the amount of unreasonable contest attorney's fees to which Claimant's counsel is entitled in light of our opinion.

Jurisdiction relinquished.