J-S40030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FREDERICK CLEA | : | |
| | : | |
| Appellant | : | No. 1467 EDA 2022 |

Appeal from the Judgment of Sentence Entered January 26, 2022
In the Court of Common Pleas of Montgomery County
Criminal Division at No:  CP-46-CR-0006414-2020

BEFORE:  PANELLA, P.J., STABILE, J., and KING, J.

MEMORANDUM BY STABILE, J.:                    **FILED MARCH 30, 2023**

Appellant, Frederick Clea, appeals from the January 26, 2022 judgment of sentence imposing two consecutive sentences of life imprisonment for two counts of first-degree murder.[1]

The trial court summarized the facts and procedural history in its Pa.R.A.P. 1925(a) opinion:

> [Appellant] intentionally shot and killed his mother-in-law, Mekenda Saunders, and his wife, Latiya Clea, on July 25, 2020, in the family's home in Cheltenham Township, Montgomery County. The shootings, which occurred in the presence of the Cleas' then 10-year-old daughter and then five-year-old son, followed an argument between [Appellant] and Latiya Clea over the whereabouts of the magazine for [Appellant's] firearm.
>
> [Appellant] was charged with two counts of first-degree murder, two counts of third-degree murder, and one count of possession of an instrument of crime ("PIC").  During pre-trial

---

[1]  18 Pa.C.S.A. § 2502(a).

proceedings, [Appellant moved for a competency and taint hearing for [A.C., the Clea's ten-year-old daughter]. The Honorable William R. Carpenter granted the motion for a competency hearing, but denied the request for a taint hearing. The matter then proceeded to a trial before the undersigned, with [Appellant] stipulating to the competency of A.C.

This court found [Appellant] guilty of both counts of first-degree murder and sentenced him to consecutive terms of life in prison without the possibility of parole. [Appellant] filed post-sentence motions, which this court denied.

Trial Court Opinion, 7/14/22, at 1-2 (record citations omitted).

In this timely appeal, Appellant raises two assertions of error:

1. Did the lower court err in denying [Appellant's] request for a taint hearing where [Appellant] put forth evidence that [A.C.] had received information from outside sources, namely, the child's statement during her forensic interview that, "[her mother] had apparently called the police."?

2. Did the lower court err in overruling [Appellant's] objection to improper remarks by the prosecutor in closing argument in which the prosecutor improperly appealed to the emotions of the factfinder stating [Appellant], "took away [the victim's] chance to see those kids grow up, graduate from high school, get married, and he took that away from his kids, no mother at their graduation … no mother at their wedding, and he did that on July 25th of 2020 when he committed first-degree murder, not once, but twice."?

Appellant's Brief at 3 (brackets in original).

Appellant first challenges the trial court's denial of a taint hearing as to A.C., the daughter of Appellant and Latiya Clea. Pennsylvania law presumes the competency of witnesses: "Every person is competent to be a witness except as otherwise provided by statute or these rules." Pa.R.E. 601(a).

Nonetheless, Pennsylvania law requires that child witnesses be examined for competency as follows:

> There must be (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering what it is that she is called to testify about and (3) a consciousness of the duty to speak the truth.

*Commonwealth v. Delbridge*, 855 A.2d 27, 39 (Pa. 2003). In *Delbridge*, our Supreme Court held that an allegation of taint speaks to the second prong of the child competency analysis. *Id.* at 40. Thus, taint may be explored at a pretrial competency hearing.

> In order to trigger an investigation of competency on the issue of taint, the moving party must show some evidence of taint. Once some evidence of taint is presented, the competency hearing must be expanded to explore this specific question. During the hearing the party alleging taint bears the burden of production of evidence of taint and the burden of persuasion to show taint by clear and convincing evidence. Pennsylvania has always maintained that since competency is the presumption, the moving party must carry the burden of overcoming that presumption.

*Id.*

We consider the following factors to determine whether a child witness is incompetent because of taint:

> (1) the age of the child; (2) the existence of a motive hostile to the defendant on the part of the child's primary custodian; (3) the possibility that the child's primary custodian is unusually likely to read abuse into normal interaction; (4) whether the child was subjected to repeated interviews by various adults in positions of authority; (5) whether an interested adult was present during the course of any interviews; and (6) the existence of independent evidence regarding the interview techniques employed.

*Commonwealth v. Judd*, 897 A.2d 1224, 1229 (Pa. Super. 2006), *appeal denied*, 912 A.2d 891 (Pa. 2006).

The resolution of a taint challenge is within the discretion of the trial court. *Delbridge*, 855 A.2d at 41. On appeal, we look to the totality of the circumstances to determine whether the moving party has produced evidence of taint. *Id.* The *Delbridge* Court remanded for a new competency hearing because the victims underwent repeated interviews by adults, including a district attorney, state police, and a doctor, and there was evidence to support an inference that the defendant was "vilified" during the interview process. *Id.*

Appellant relies primarily on two cases in support of his argument. In *J.K. v. Dep't of Humans Svcs.*, 178 A.3d 933 (Pa. Commw. 2018), the petition sought review of the refusal to remove an indicated report of child abuse from the child abuse registry. There, the child testified that the petitioner did "inappropriate things," including touching her "private spot" and having her touch his "private spot," but she could not remember when or how old she was when the events occurred. *Id.* at 935-36. The child's mother later stated that the first question she asked child was whether the petitioner "inappropriately touched" her. *Id.* at 936. A child psychologist, testifying on behalf of the petitioner, opined that the mother's use of the word "inappropriate" suggested to the child what to say. *Id.* One month after the child's mother made the accusation of abuse, the child spoke to a forensic

interviewer who told the child she was a "hero" for testifying about the "wrong" things the petitioner did. *Id.*

On appeal, the Commonwealth Court held that the child's testimony was tainted. The Commonwealth Court noted that the child was seven years old when she first made her allegations and thus susceptible to adult influence. *Id.* at 943. Further, she had difficulty recalling the events she described. *Id.* She was unable to recall any sexual contact at her competency hearing prior to the preliminary hearing. *Id.* At the hearing before an Administrative Law Judge six months later, she recalled sexual contact but not when it occurred or how old she was. *Id.* Further, the mother was in a contentious custody battle with petitioner over another child, and mother had made apparently unfounded accusations of sexual abuse against others. *Id.* at 945. The *J.K.* Court held that the child's testimony should have been dismissed as incompetent. *Id.*

Appellant also relies on *Commonwealth v. Davis*, 939 A.2d 905 (Pa. Super. 2007), wherein a father was accused of the sexual abuse of his nine-year-old child. The child's first interview consisted of leading questions, and the child testified at the competency hearing that he could not remember the incident. *Id.* at 906. For those reasons, the trial court found the child incompetent to testify and the Commonwealth appealed. The record revealed that the first interviewer began by saying, "I know this is tough. I know dad has done some things that weren't appropriate and that's what we're going to

talk to you about." ***Id.*** at 908. At the taint hearing, the child could recall nothing. ***Id.*** at 910. In affirming the trial court, the ***Davis*** panel wrote:

> The problems with the testimony are twofold: first, [the child's] independent recollection of the incident was extremely limited; and second, the suggestive technique and content of the interviews provided clear and convincing evidence that [the child's] later recollections were tainted and product of coercion, not of his own memory.

***Id.***

Instantly, Appellant cites A.C.'s age (10), and the fact that "[w]hile [A.C.] recounted the details of the shootings, she also stated that, "I don't know how but apparently my mom's phone called the police." Appellant's Brief at 13. According to Appellant, this statement alone was sufficient to create the need for a taint hearing because it suggests that A.C. was describing facts she learned from others. ***Id.*** We disagree and conclude that ***J.K.*** and ***Davis*** are easily distinguishable.

In ***J.K.***, the record indicated that the child's first interview on the alleged abuse was with her mother. The mother had a motive to fabricate the allegations and had possibly done so before. The child's allegations mimicked the mother's phraseology in the use of the world "inappropriate." The child's own memory of the alleged abuse was spotty at best. Finally, a forensic interviewer praised the child for coming forward with the allegations. None of these things happened in the present case.

In ***Davis***, a police interviewer drew the allegations out of the child with leading and suggestive questions, including an opening statement about how

the father had done something bad. On the stand at the taint hearing, the witness had no recollection of the alleged abuse. Again, none of these things happened in the present case.

Appellant has produced no evidence of leading suggestive, questions, and no evidence that any witness planted any ideas in A.C.'s head. To the contrary, A.C.—an eyewitness to the murders—gave a clear account of the murders in her interview only hours after they occurred. Appellant does not suggest that the interviewer used leading questions or any other suggestive technique. Appellant fails to explain how a suggestion of taint arose from A.C.'s knowledge that the initial call to police came from her deceased mother's cell phone. His argument entirely ignores the relevant factors set forth in **Judd**. We discern no abuse of discretion in the trial court's denial of Appellant's request for a taint hearing.

Next, Appellant argues that the prosecutor committed misconduct in appealing to the emotions of the factfinder. We note at the outset that the factfinder here was a judge, and not a jury. "[T]he trial court, sitting as the trier of fact, is presumed to know the law, ignore prejudicial statements, and disregard inadmissible evidence." **Commonwealth v. Konias**, 136 A.3d 1014, 1022 (Pa. Super. 2016), 145 A.3d 724 (Pa. 2016). The trial court stated in its Pa.R.A.P. 1925(a) opinion that portion of the prosecutor's closing argument presently in dispute did not factor into the court's verdict. Trial Court Opinion, 7/14/22, at 5. Appellant's argument fails for this reason alone.

In any event, Appellant has failed to make out a claim of prosecutorial misconduct. "Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion." *Commonwealth v. Harris*, 884 A.2d 920, 927 (Pa. Super. 2005), *appeal denied*, 928 A.2d 1289 (Pa. 2007).

> In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one. Not every unwise remark on a prosecutor's part constitutes reversible error. Indeed, the test is a relatively stringent one. Generally speaking, a prosecutor's comments do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward [Appellant] so that they could not weight the evidence objectively and render a true verdict. Prosecutorial misconduct, however, will not be found where comments were based on evidence or proper inferences therefrom or were only oratorical flair. In order to evaluate whether comments were improper, we must look to the context in which they were made. Finally, when a trial court finds that a prosecutor's comments were inappropriate, they may be appropriately cured by a cautionary instruction to the jury.

*Id.*

Here, the prosecutor argued, over Appellant's timely objection, that "[Appellant] took away [the victims'] chance to see those kids grow up, graduate from high school, get married, and he took that way from his kids, no mother at their graduation [...] no mother at their wedding, and he did that on July 25th of 2020 when he committed first-degree murder not once, but twice." N.T. Trial, 1/26/22, at 23.

Appellant relies on *Commonwealth v. DeJesus*, 860 A.2d 102, 117 (Pa. 2004), in which our Supreme Court vacated a death sentence because

the prosecutor, in closing argument, asked the jury to "send a message to people on the street and people in prisons" with its verdict. "The prosecutor's improper comments effectively invited jurors to ignore their sworn duty to decide the matter exclusively upon the facts presented concerning the weighing of specific statutory aggravating and mitigating circumstances." *Id.*

Appellant also cites *Commonwealth v. LaCava*, 666 A.2d 221 (Pa. 1995), where the prosecutor's closing argument referenced the detrimental impact of drugs on society:

> Can you imagine being one of the decent people on Fairhill Street who has to live there very day? I mean, we kept hearing the defense about how the neighborhood has changed. Sure it's changed. It's changed because of people like him. They are the ones who wreck the neighborhood. They are the ones who wreck the Fairhill Streets and the Butler Streets and all the other streets. It's the drug dealer who wrecks it. Can you imagine trying to live on Fairhill Street and you are sitting there in your home and you want your kids to go out and play but you know they can't go out and play because the cars are lined up and down the block from people who want to buy drugs[.]

*Id.* at 236. The *LaCava* Court concluded that the prosecutor committed misconduct because the "sole purpose of the prosecutor's comments was to attempt to turn the jury's sentencing of appellant into a plebiscite on drugs and drug dealers and their destructive effect on society." *Id.* at 237.

The instant case is distinguishable. The prosecutor's argument arose from inferences drawn from the fact established at trial. It is a fact that Latiya Clea and Mekenda Saunders will be absent from the lives of A.C. and her younger brother. And in highlighting that fact, the prosecutor did not invite

the factfinder to send a message to society or make the verdict a referendum on the deleterious effects of drug dealing, as was the case in **DeJesus** and **LaCava**. We discern no error in the trial court's refusal to award a new trial based on prosecutorial misconduct in the closing argument.

Because we have found no merit to either of Appellant's assertions of error, we affirm the judgment of sentence.

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date: 3/30/2023*