# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

General Motors, LLC, : 
                    Petitioner :
                                   :
          v.                       : No. 299 C.D. 2020
                                   : Submitted: October 16, 2020
Workers' Compensation Appeal      :
Board (Jegou),                     :
                    Respondent     :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE P. KEVIN BROBSON, Judge[1]
          HONORABLE CHRISTINE FIZZANO CANNON, Judge


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                        **FILED:  July 2, 2021**


General Motors, LLC (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board), dated February 24, 2020.  The Board affirmed the decision of a Workers' Compensation Judge (WCJ), granting the review petition filed by Christine Jegou (Claimant) and granting, in part, and denying, in part, the termination petition filed by Employer.  For the reasons set forth below, we affirm, in part, and reverse, in part, the Board's order.

## I.  BACKGROUND

Claimant worked for Employer as a sequencer.  On January 10, 2008, Claimant sustained a bilateral shoulder sprain/strain while working for Employer.

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson became President Judge.

Employer accepted liability for Claimant's work-related injury pursuant to a Notice of Compensation Payable (NCP), dated February 21, 2008.[2]  Sometime thereafter, on November 9, 2017, Employer filed a termination petition, asserting that Claimant had fully recovered from her work-related injury as of October 23, 2017.  Subsequent thereto, on November 14, 2017, Claimant filed a review petition, asserting that the description of her work-related injury was incorrect and should be amended to include bilateral shoulder impingement, bilateral shoulder tendinopathy, aggravation of preexisting arthritis in bilateral shoulders, trapezius spasm, aggravation of preexisting degenerative disc disease in the cervical spine, cervical radiculopathy, and a cervical strain/sprain.

Claimant testified before the WCJ at a hearing held on December 12, 2017.  At that time, Claimant stated that she has worked for Employer as a sequencer since June 1976.  (Reproduced Record (R.R.) at 17a.)  As a sequencer, Claimant was responsible for loading car parts weighing up to fifty pounds onto a cart so that they could be put away.  (*Id.* at 17a-18a.)  On January 10, 2008, Claimant was struggling to lift the front flap of a container that she was attempting to collapse, when she experienced pain across her shoulders and neck.  (*Id.* at 18a.)  Shortly thereafter, Claimant began treating with Christopher Aland, M.D.  (*Id.* at 18a-19a, 27a-28a.)  Over the course of his treatment of Claimant, Dr. Aland prescribed acupuncture, physical therapy, and cortisone injections in both of Claimant's shoulders.  (*Id.* at 19a, 28a-29a.)  While Claimant continues to actively treat with Dr. Aland, her visits since 2014 have only been about once a year.  (*Id.* at 19a-20a, 24a, 28a-30a, 35a-36a.)  Claimant explained that, even though she continues to experience pain

---

[2] Initially, pursuant to a medical-only NCP dated January 20, 2008, Employer accepted liability only for the payment of Claimant's medical expenses associated with the January 10, 2008 work-related injury.

and Dr. Aland prescribes medication for her pain, there is no other treatment that Dr. Aland can provide to her, so the frequency of her visits has decreased to once or twice per year "unless something drastic happen[s]." (*Id.* at 20a, 37a-38a.)

Claimant testified further that, in February 2017, Jeffrey Abrams, M.D., performed shoulder replacement surgery on her right shoulder. (*Id.* at 20a-21a, 34a.) Since the surgery, Claimant continues to experience pain in both her shoulders and neck that shoots down her left arm and causes tingling and numbness in her right arm. (*Id.* at 21a-22a, 43a-44a.) She also continues to have difficulty with dressing, bathing, sleeping, driving, and doing laundry. (*Id.* at 22a-24a, 31a.) Claimant indicated that she does not believe that she has fully recovered from her January 10, 2008 work-related injury. (*Id.* at 24a.) She explained that, while she would love to work again, she does not feel that she is capable of doing so, because "[she] can't use [her] upper body. . . . [She] can't reach overhead. [She] can't do anything too heavy." (*Id.* at 25a, 33a-34a.)

In support of her review petition and in opposition to Employer's termination petition, Claimant presented the deposition testimony of Dr. Aland, a board-certified sports medicine doctor. (*Id.* at 78a-79a.) Dr. Aland testified that he first treated Claimant on March 27, 2008, for complaints of shoulder pain following the January 10, 2008 work-related incident. (*Id.* at 80a-81a.) At that time, Dr. Aland ordered an electromyography (EMG), a magnetic resonance image (MRI) of Claimant's cervical spine, an MRI of Claimant's right shoulder, and an MRI of Claimant's left shoulder. (*Id.* at 83a-87a.) The results of the EMG, which was performed on April 10, 2008, were essentially normal, but Dr. Aland explained that a negative EMG does not necessarily mean that there has not been any nerve damage. (*Id.* at 84a-85a.) The MRI of Claimant's cervical spine, which was performed on

3

May 2, 2008, revealed degenerative changes at multiple levels with no evidence of disc herniations or an acute or traumatic injury to the neck. (*Id.* at 85a-86a.) The MRI of Claimant's right shoulder, which was performed on October 9, 2009, revealed tendinopathy without a full thickness rotator cuff tear and degenerative changes in the glenohumeral joint. (*Id.* at 86a-87a.) The results of the MRI of Claimant's left shoulder were essentially the same, demonstrating mild degenerative changes and an arthritic change in the glenohumeral joint with no evidence of full thickness rotator cuff pathology. (*Id.* at 87a.) Dr. Aland explained that, over the course of his treatment of Claimant, the bulk of Claimant's symptoms were above the shoulder at her trapezius and the base of her neck—*i.e.*, "her symptoms were all very localized sort of [at] the neck part of the shoulder as opposed to the joint part of the shoulder." (*Id.* at 88a-89a.)

Dr. Aland testified further that he most recently treated Claimant on August 21, 2017, November 1, 2017, and July 30, 2018. (*Id.* at 90a, 92a, 114a-15a.) When asked to explain why Claimant's treatment dates were so far apart, Dr. Aland explained:

> [Claimant] basically plateaued with her symptoms. She has not required much in the way of treatment on a routine basis. She does occasionally get symptomatic and require treatment but, you know, she's basically able to modify her symptoms by controlling her activity. And so, you know, we have discussed that there's a lot she could do but she kind of learned over the past ten years what tends to flare her up and what tends to not flare her up. It's very little maintenance that we had to do.

(*Id.* at 90a.) Dr. Aland further explained that, at the time of his last examination, Claimant continued to experience pain at the base of her neck, "limited range of motion of [her] cervical spine . . . [and] significant spasm throughout her trapezius

4

with tenderness along the edge of the muscle itself and tenderness along the dorsal and posterior aspect of her shoulder." (*Id.* at 91a-93a.)

Ultimately, Dr. Aland opined within a reasonable degree of medical certainty that Claimant has not fully recovered from her January 10, 2008 work-related injury—*i.e.*, Claimant continues to suffer from work-related cervical radiculitis resulting in trapezius spasm. (*Id.* at 93a, 95a, 121a.) He explained that Claimant "is able to control her symptoms by controlling her activity but she still has symptoms from time to time." (*Id.* at 93a.) He further explained that "when you have an injury to muscle and nerves, structurally, something happens" and "nerves don't always heal or heal perfectly." (*Id.* at 93a-95a.) Dr. Aland indicated that he always believed that Claimant's symptoms were caused by the irritability in the nerves going to the base of her neck, not by her shoulders. (*Id.* at 118a-19a.) Dr. Aland further indicated that he was able to differentiate between Claimant's work-related cervical radiculitis with resulting trapezius spasm and her preexisting degenerative changes to her cervical spine based upon Claimant's symptom distribution, because an individual with a cervical spine nerve that is irritated by degeneration typically has symptoms— numbness and tingling—all the way down the arm. (*Id.* at 96a-97a.)

On cross-examination, Dr. Aland admitted that Claimant has recovered from the work-related cervical sprain/strain but noted that she continues to suffer from the residual trapezius spasm. (*Id.* at 100a.) Dr. Aland further admitted that there is no diagnostic study to support his diagnosis of cervical radiculitis with resulting trapezius spasm. (*Id.* at 100a-01a.) Dr. Aland, however, explained:

> [I]t's not just subjective complaints of pain. You can objectively see and feel the spasm in [Claimant's] muscles. There's only two things that create insult to, put the muscle's irritable in the intrinsic nature or the nerve signal going to the muscle is somewhat, creating that sort of short circuit, if you will. We don't understand that . . . . [O]nce you've injured that nerve, it just doesn't always get better. [There's] very little

5

diagnostic, objective diagnostic testing that you can do to show that. It's just one of those things.

(*Id.* at 101a.) Dr. Aland also admitted that trapezius spasm related to long-term cervical radiculitis can occur in a patient with degenerative changes in her cervical spine. (*Id.* at 110a, 116a-18a.) When questioned whether it is possible that Claimant's current findings were related, not to the January 10, 2008 work-related injury, but rather, to the advanced natural progression of the degenerative changes in her cervical spine, Dr. Aland explained:

> Trapezius spasm is caused by irritability of the nerves. We don't see cervical radiculopathy which—can you get some neck pain from degenerative arthritis? Yes. Absolutely get some irritability but typically, what we see with degenerative arthritis of the neck progression, you have radiculopathy which is when you have a long track sign. You see extending down the arm and can get some irritability. That's not the clinical presentation we're seeing with somebody with severe neck arthritic pain and radiculopathy.

(*Id.* at 111a.) He noted that Claimant's complaints of pain and numbness radiating down her arm at the time of her November 1, 2017 office visit related to the degenerative condition of her cervical spine, not her trapezius. (*Id.* at 115a-16a.) He also admitted that, "at least at this time," he did not know what was causing the significant spasm that he noted on November 1, 2017, and July 30, 2018. (*Id.* at 116a-17a.) Dr. Aland further acknowledged that Claimant did not make him aware that she had suffered a fall and fractured her wrist in February 2015 and admitted that a fall of that nature could aggravate a cervical radiculopathy or trapezius spasm condition. (*Id.* at 111a-13a.)

In opposition to Claimant's review petition and in support of its termination petition, Employer presented the deposition testimony of Marc Manzione, M.D., who is board certified in orthopedic surgery. (*Id.* at 139a.) Dr. Manzione performed an independent medical examination (IME) of Claimant on October 23, 2017, which

6

included reviewing Claimant's medical records and diagnostic studies, obtaining a history, and performing a physical examination. (*Id.* at 144a-66a.) Based upon the results of his IME, Dr. Manzione opined within a reasonable degree of medical certainty that, as a result of the January 10, 2008 work-related incident, Claimant sustained a bilateral shoulder sprain/strain, bilateral shoulder impingement syndrome, bilateral shoulder tendinopathy, and a cervical sprain/strain. (*Id.* at 166a-67a, 170a-71a.) Dr. Manzione did not, however, believe that Claimant sustained an aggravation of her preexisting arthritis in her bilateral shoulders, trapezius spasm, an aggravation of her preexisting degenerative disc disease in her cervical spine, or cervical radiculopathy as a result of the January 10, 2008 work-related incident. (*Id.* at 170a-72a.) He explained that, based upon his review of Claimant's early clinical records, it was

> clear from the objective testing that [Claimant] did not sustain any neck or shoulder injury, which resulted in any anatomic or structural change or would have any impact on the otherwise natural clinical course of [Claimant's] cervical degenerative condition or the osteoarthritic conditions that ultimately affected both of [Claimant's] shoulders.

(*Id.* at 172a.) Dr. Manzione also explained that his physical examination did not reveal any symptoms or physical findings to support the presence of cervical radiculopathy or trapezius spasm. (*Id.* at 174a-75a.) He noted further that Claimant's EMG from 2008 also did not reveal any evidence of cervical radiculopathy. (*Id.* at 175a, 184a-85a.)

Dr. Manzione further opined that Claimant had fully recovered from and required no further treatment for her January 10, 2008 work-related injury as of October 23, 2017, the date of his IME. (*Id.* at 167a-70a, 175a-76a.) Dr. Manzione explained that Claimant's ongoing problems and all of his clinical findings were not related to the January 10, 2008 work-related injury, but rather to Claimant's cervical

7

degenerative condition, the residual condition of Claimant's right shoulder following the replacement surgery, and the osteoarthritis in the glenohumeral joint of Claimant's left shoulder. (*Id.* at 167a-68a, 173a-74a, 185a.) Dr. Manzione further explained that, even if Claimant did suffer an aggravation of her preexisting arthritis in her bilateral shoulders, trapezius spasm, an aggravation of her preexisting degenerative disc disease in her cervical spine, or cervical radiculopathy as a result of the January 10, 2008 work-related incident, Claimant had also fully recovered from those injuries by the time of his IME. (*Id.* at 172a-73a.)

On January 4, 2019, the WCJ issued a decision, granting Claimant's review petition and granting, in part, and denying, in part, Employer's termination petition. In so doing, the WCJ summarized the witnesses' testimony and made the following credibility determinations and relevant factual findings:

> 14. This [WCJ] finds . . . Claimant to be credible. This is based primarily on her demeanor and comportment at the hearing. No factual testimony was presented to challenge her credibility. The surveillance showed nothing inconsistent with her restrictions. There is no abusive amount of current treatment. Dr. Manzione agreed that she was cooperative during his exam. Her testimony is supported by the treating physician.
>
> 15. This [WCJ] finds that . . . Claimant suffers from significant degeneration and osteoarthritis of both shoulders and the cervical spine. However, this [WCJ] finds that these conditions were not caused or aggravated by the work injury. The degeneration was present on the earliest diagnostic studies and pre-existed the work injury. This [WCJ] notes the following:
>
> a. Dr. Manzione credibly explained that the early records and objective tests do not show that Claimant sustained any neck or shoulder injury which resulted in any anatomic or structural change that would impact the normal and natural clinical course of cervical or shoulder degeneration.
>
> b. Both experts tracked the diagnostic studies and agreed that there was a progression of the degeneration years after the work trauma

8

when Claimant was not even working [for] Employer. The progression related to the natural progression of the degenerative disease.

c. Dr. Aland explained that . . . Claimant's symptoms never fit a shoulder or spinal degenerative condition. From early in his treatment, he felt that the primary problem was Claimant's neck and trapezius, and not the shoulder. Therefore, the shoulder degeneration is not work related. Also, Dr. Aland explained that cervical degeneration impinging on the exiting nerves produces symptoms in the long tracks, down the arms. Claimant's work-related symptom complex consists of more localized cervical pain into the trapezius muscles.

d. Claimant's own expert, Dr. Aland, never related the shoulder osteoarthritis or cervical degeneration to the work injury. Similarly, Dr. Manzione clearly stated that the degeneration was unaffected by the work injury.

16. The parties agree that the work injury included bilateral shoulder impingement, bilateral shoulder tendinopathy and cervical sprain/strain in addition to the bilateral shoulder strain noted on the [NCP]. In addition, this [WCJ] finds that . . . Claimant suffered a cervical radiculitis which results in trapezius spasm, per the credible testimony of Dr. Aland. This [WCJ] finds that the work injury has resolved except for the cervical strain and cervical radiculitis contributing to the ongoing trapezius spasm. Dr. Aland credibly explained that . . . Claimant continues to have trapezius pain because of muscle damage itself and also from irritability of the cervical nerves feeding the trapezius. This [WCJ] rejects as incredible the contrary testimony of Dr. Manzione. In rendering this finding, this [WCJ] notes the following to be significant[:]

a. Foremost, Dr. Aland has treated Claimant for 10 years, since March 2008, about [two] months after the work injury. This prolonged interaction with Claimant for purposes of treatment makes him uniquely qualified to understand her condition. In contrast, Dr. Manzione evaluated Claimant on only one occasion on behalf of . . . Employer for this claim.

b. Dr. Aland's credibility is bolstered by his candid concessions in his testimony. He made no attempt to over[]reach in his diagnosis. He limited the ongoing work injury only to the neck and trapezius area. He agreed that he always suspected the main problem was cervical and not shoulder related. He made no attempt to relate the significant cervical and bilateral shoulder degeneration to the work injury.

9

c. Even Dr. Manzione noted pain on the full extent of cervical range of motion and tenderness in the trapezius. This is consistent with the ongoing work injury.

d. Employer argues that the lack of treatment is an indication of recovery. However, the lack of treatment does not necessarily establish a full recovery. Claimant and Dr. Aland explained that . . . Claimant reached a plateau and that further treatment would not be beneficial. Her symptoms were controlled by checking her activity level. This is a reasonable explanation. Their refusal to pursue needless treatment bolsters their credibility.

e. Employer argues that the early EMG was negative, but Dr. Aland credibly explained that this is not conclusive and that nerve irritability may still exist even with the normal EMG.

(WCJ's Decision at 7-8 (record citations omitted).)

Based on these credibility determinations and relevant factual findings, the WCJ essentially concluded: (1) Claimant met her burden of proving that, in addition to a bilateral shoulder sprain/strain, she also sustained bilateral shoulder impingement, bilateral shoulder tendinopathy, a cervical sprain/strain, cervical radiculitis, and trapezius spasm as a result of the January 10, 2008 work-related incident; (2) Claimant did not meet her burden of proving that the January 10, 2008 work-related incident caused her to sustain or aggravate her bilateral shoulder osteoarthritis and/or cervical spine degeneration; (3) Employer met its burden of proving that, as of October 23, 2017, Claimant had fully recovered from the bilateral shoulder sprain/strain, bilateral shoulder impingement, and bilateral shoulder tendinopathy that she sustained as a result of the January 10, 2008 work-related incident; and (4) Employer did not meet its burden of proving that Claimant had fully recovered from "the cervical [sprain/]strain and cervical radiculitis contributing to the ongoing trapezius spasm" that she sustained as a result of the January 10, 2008 work-related incident. Employer appealed to the Board, which affirmed the WCJ's decision. Employer then petitioned this Court for review.

10

## II.  ARGUMENTS ON APPEAL

On appeal,[3] Employer argues that the Board erred by affirming the WCJ's decision because:  (1) the WCJ's finding that Claimant sustained cervical radiculitis and trapezius spasm as a result of the January 10, 2008 work-related incident is not supported by substantial, competent evidence of record; (2) the WCJ's finding that Claimant had not fully recovered from the work-related cervical sprain/strain, cervical radiculitis, and trapezius spasm is not supported by substantial evidence of record; (3) the WCJ should not have credited Dr. Aland's opinion over Dr. Manzione's opinion; and (4) the WCJ failed to issue a reasoned decision as required by Section 422(a) of the Workers' Compensation Act (Act).[4]  In response thereto, Claimant contends that Employer's appeal is frivolous and, therefore, she is entitled to an award of counsel fees pursuant to Pennsylvania Rule of Appellate Procedure 2744.

---

[3] "Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence[,] and whether constitutional rights were violated."  *Combine v. Workers' Comp. Appeal Bd. (Nat'l Fuel Gas Distrib. Corp.)*, 954 A.2d 776, 778 n.1 (Pa. Cmwlth. 2008), *appeal denied*, 967 A.2d 961 (Pa. 2009).

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.  Throughout its brief, Employer also suggests that the WCJ capriciously disregarded evidence of record—*i.e.*, the objective results of Claimant's diagnostic studies, Dr. Aland's alleged concessions regarding Claimant's underlying degenerative condition, and Dr. Manzione's opinion.  Employer, however, did not fully develop this argument in its brief to this Court as required by Pennsylvania Rule of Appellate Procedure 2119 and, therefore, such argument has been waived.  *See City of Phila. v. Workers' Comp. Appeal Bd. (Calderazzo)*, 968 A.2d 841, 846 n.4 (Pa. Cmwlth.), *appeal denied*, 980 A.2d 609 (Pa. 2009).  Even if Employer did not waive this argument, however, we could not conclude that the WCJ capriciously disregarded evidence of record as suggested by Employer; rather, the WCJ referenced Claimant's diagnostic studies throughout his opinion, considered Dr. Aland's concessions regarding Claimant's underlying degenerative condition, and considered, but discredited, Dr. Manzione's opinion to the extent that such opinion was contrary to that offered by Dr. Aland.  *See Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 144 (Pa. Cmwlth. 2004) ("Capricious disregard occurs only when the fact-finder deliberately ignores relevant, competent evidence.").

11

## III.  DISCUSSION

### A.  Substantial Evidence – Review Petition

Employer argues that the Board erred by affirming the WCJ's decision to grant Claimant's review petition because Dr. Aland's testimony was incompetent and, therefore, cannot constitute substantial evidence to support the WCJ's finding that Claimant sustained cervical radiculitis and trapezius spasm as a result of the January 10, 2008 work-related incident.  More specifically, Employer contends that there was no objective medical evidence to support Dr. Aland's diagnosis of work-related cervical radiculitis resulting in ongoing trapezius spasm.  Employer suggests, rather, that Claimant's diagnostic studies actually "undermine" any such diagnosis, because they reveal "a progressively deteriorating degenerative condition" with no acute trauma to Claimant's cervical spine or radiculopathy. (Employer's Br. at 32.)  Employer argues, therefore, that Dr. Aland "did not, and could not, differentiate [Claimant's] diagnostic findings of a normal progression of [her] age-related degenerative processes from those which may [have been] traumatic in nature and work-related." (*Id.* at 31.)  Employer further contends that Dr. Aland even "conceded that Claimant's non-work[-]related degenerative condition could produce the very same complaints upon which the [WCJ] found ongoing work-related disability." (*Id.* at 32.)  Given that Claimant sustained her work-related injury more than ten years ago and stopped working at that time, Employer suggests that "the only logical cause" of Claimant's cervical radiculitis and trapezius spasm was "the natural, clinical progression of [her] underlying degenerative condition." (*Id.* at 33-34.)  Employer also argues that Dr. Aland's opinion was based upon an incomplete medical history, because Dr. Aland did not review any of Claimant's medical records prior to 2013 and did not have any

12

personal knowledge of Claimant for the first five years following the January 10, 2008 work-related injury, but instead relied upon the false and incomplete history provided to him by Claimant, and Dr. Aland was not aware that Claimant fell and fractured her wrist in February 2015. In sum, Employer contends that Dr. Aland could not offer a competent, credible medical opinion that Claimant's cervical radiculitis and trapezius spasm were caused by the January 10, 2008 work-related incident, given "Claimant's undisputed pre[]existing degenerative conditions, the lack of any objective medical evidence [or] diagnostic studies supporting the cervical radiculopathy or trapezius spasm and instead showing no trauma, Dr. Aland's incomplete knowledge of Claimant's medical history, and [Dr. Aland's] other concessions." (*Id.* at 36.)

In response, Claimant argues that the Board properly affirmed the WCJ's decision to grant Claimant's review petition because the WCJ's findings relative thereto are supported by Dr. Aland's credible testimony. Claimant further contends that Employer's appeal is nothing more than an attempt to have this Court reweigh the evidence and make new credibility determinations. In that regard, Claimant argues that it is irrelevant that Dr. Manzione's testimony could have supported a finding in favor of Employer with respect to the review petition because the WCJ thoroughly reviewed the evidence, rendered his credibility determinations, and "meticulously" explained the reasoning behind his credibility determinations and factual findings.

At the outset, it is well settled that the WCJ is the ultimate finder of fact in workers' compensation proceedings. *Williams*, 862 A.2d at 143. As fact-finder, matters of credibility, conflicting medical evidence, and evidentiary weight are within the WCJ's exclusive province. *Id.* If the WCJ's findings are supported by

13

substantial evidence, they are binding on appeal. *Agresta v. Workers' Comp. Appeal Bd. (Borough of Mechanicsburg)*, 850 A.2d 890, 893 (Pa. Cmwlth. 2004). In determining whether the WCJ's findings are supported by substantial evidence, we may not reweigh the evidence or the credibility of the witnesses but must simply determine whether the WCJ's findings have the requisite measure of support in the record as a whole. *Elk Mountain Ski Resort, Inc. v. Workers' Comp. Appeal Bd. (Tietz, deceased)*, 114 A.3d 27, 32 n.5 (Pa. Cmwlth. 2015). It is irrelevant whether there is evidence to support contrary findings; the relevant inquiry is whether substantial evidence supports the WCJ's necessary findings. *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

Pursuant to Section 413(a) of the Act,[5] "the WCJ may amend [or correct] the NCP at any time during litigation of any petition if the evidence shows that the injury sustained in the original work incident is different or more expansive than that listed in the NCP." *Harrison v. Workers' Comp. Appeal Bd. (Auto Truck Transp. Corp.)*, 78 A.3d 699, 703 (Pa. Cmwlth. 2013), *appeal denied*, 92 A.3d 812 (Pa. 2014) (citing *Cinram Mfg., Inc. v. Workers' Comp. Appeal Bd. (Hill)*, 975 A.2d 577, 580-81 (Pa. 2009)). "The party seeking to amend the NCP has the burden of proving that the NCP is materially incorrect." *Id.* A review petition seeking to add additional injuries to the NCP that were not previously accepted by an employer carries the same burden as a claim petition. *Liveringhouse v. Workers' Comp. Appeal Bd. (ADECCO)*, 970 A.2d 508, 512 (Pa. Cmwlth.), *appeal denied*, 985 A.2d 220 (Pa. 2009). Pursuant to Section 301(c)(1) of the Act,[6] an employee's injuries are compensable if they "(1) arise[] in the course of employment and (2) [are] causally

---

[5] 77 P.S. § 771.

[6] 77 P.S. § 411(1).

14

related thereto." *ICT Grp. v. Workers' Comp. Appeal Bd. (Churchray-Woytunick)*, 995 A.2d 927, 930 (Pa. Cmwlth. 2010). Further, an employee must demonstrate that she is disabled as a consequence of the work-related injury. *Cromie v. Workmen's Comp. Appeal Bd. (Anchor Hocking Corp.)*, 600 A.2d 677, 679 (Pa. Cmwlth. 1991). Unequivocal medical evidence is required where it is not obvious that an injury is causally related to the work incident. *Id.* "The question of whether expert medical testimony is unequivocal[] and, thus, competent evidence to support factual determinations is a question of law subject to our review." *Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 80 (Pa. Cmwlth. 2012). "In such cases, we review the testimony as a whole and may not base our analysis on a few words taken out of context." *Id.* "Taking a medical expert's testimony as a whole, it will be found to be equivocal if it is based only upon possibilities, is vague, and leaves doubt." *Kurtz v. Workers' Comp. Appeal Bd. (Waynesburg College)*, 794 A.2d 443, 449 (Pa. Cmwlth. 2002). "[M]edical testimony is unequivocal if a medical expert testifies, after providing a foundation for the testimony, that, in his professional opinion, he believes or thinks a fact exists." *O'Neill v. Workers' Comp. Appeal Bd. (News Corp. Ltd.)*, 29 A.3d 50, 57 (Pa. Cmwlth. 2011).

In addition to this requirement that a medical expert's testimony be unequivocal, the medical expert's testimony also must reflect the expert's adequate understanding of the facts to be competent. *Sears, Roebuck & Co. v. Workmen's Comp. Appeal Bd.*, 409 A.2d 486, 490 (Pa. Cmwlth. 1979). In reviewing an expert's testimony on this basis, we must consider whether the expert "had sufficient facts before him upon which to express" his medical opinion. *Id.* A medical expert's opinion will be held to be incompetent only when the opinion is based solely on inaccurate or false information; when the record as a whole contains factual support

15

for an expert's opinion, the opinion is not incompetent. *Am. Contracting Enters., Inc. v. Workers' Comp. Appeal Bd. (Hurley)*, 789 A.2d 391, 396 (Pa. Cmwlth. 2001).

Here, the WCJ's finding that Claimant sustained cervical radiculitis and trapezius spasm as a result of the January 10, 2008 work-related incident is supported by substantial evidence. Dr. Aland credibly testified that, as a result of the January 10, 2008 work-related incident, Claimant sustained cervical radiculitis resulting in trapezius spasm. Employer, nevertheless, suggests that Dr. Aland's testimony cannot constitute substantial evidence to support the WCJ's finding because Dr. Aland's testimony was incompetent. We disagree. There is simply no evidence of record to suggest that Dr. Aland's opinion that Claimant sustained work-related cervical radiculitis with resulting trapezius spasm on January 10, 2008, was based upon mere possibilities, that Dr. Aland did not have sufficient facts before him upon which he could express such opinion, or that such opinion was based upon inaccurate or false information. *See Kurtz*, 794 A.2d at 449; *Am. Contracting Enters., Inc.*, 789 A.2d at 396; *Sears, Roebuck & Co.*, 409 A.2d at 490.

While Dr. Aland may have admitted that there is no diagnostic study to support his diagnosis of work-related cervical radiculitis with resulting trapezius spasm, Dr. Aland explained that, in addition to Claimant's subjective complaints of pain, "[y]ou can objectively see and feel the spasm in [Claimant's] muscles." (R.R. at 101a.) He also explained that Claimant's negative EMG does not necessarily mean that she did not suffer damage to the nerves in her cervical spine because there is very little objective, diagnostic testing that will demonstrate nerve damage. Moreover, Dr. Aland did not ignore the fact that Claimant suffered from preexisting degenerative disease in her cervical spine at the time of the January 10, 2008 work-related incident. Rather, Dr. Aland conceded that Claimant

16

suffers from preexisting degenerative disc disease in her cervical spine, that trapezius spasm can occur in a patient with degenerative changes in the cervical spine, and that at least some of Claimant's current symptoms—*i.e.*, the pain and numbness radiating down her arm—could be related to her preexisting degenerative disc disease and not the January 10, 2008 work-related incident. Dr. Aland explained, however, that, based on Claimant's clinical presentation and symptom distribution, Claimant also suffers from work-related cervical radiculitis (irritability of or damage to the nerves going to the base of Claimant's neck) with resulting trapezius spasm. In other words, while the pain and numbness radiating down Claimant's arm may be caused by her preexisting degenerative disc disease, Dr. Aland indicated that the symptoms confined to Claimant's trapezius area are caused by the January 10, 2008 work-related incident.

Additionally, Employer's argument that Dr. Aland's opinion is based on an incomplete medical record is disingenuous. Employer appears to be questioning a statement made by Dr. Aland at the time of his deposition relative to his treatment records for Claimant from before 2013, when he left private practice. (R.R. at 97a-98a.) Employer ignores, however, that Dr. Aland never indicated that he did not review Claimant's medical records prior to 2013 or that he did not have any personal knowledge of Claimant for the first five years following the occurrence of the January 10, 2008 work-related incident. Rather, Dr. Aland simply noted that he did not have his treatment records for Claimant from before 2013 in front of him at the time of the deposition. In fact, the record clearly demonstrates that Dr. Aland first treated Claimant for her January 10, 2008 work-related injury on March 27, 2008, and that he has continued to treat Claimant since that time.

17

For these reasons, we cannot conclude that Dr. Aland's testimony was incompetent and, therefore, could not constitute substantial evidence to support the WCJ's finding that Claimant sustained cervical radiculitis and trapezius spasm as a result of the January 10, 2008 work-related incident.

## B. Substantial Evidence – Termination Petition

Employer argues that the Board erred by affirming the WCJ's decision to deny, in part, Employer's termination petition because the WCJ's finding that Claimant had not fully recovered from the work-related cervical sprain/strain, cervical radiculitis, and trapezius spasm is not supported by substantial evidence. In that regard, Employer contends that both Dr. Aland and Dr. Manzione agreed that Claimant had fully recovered from the work-related cervical sprain/strain, and, therefore, at a minimum, the WCJ's denial of Employer's termination petition relative to the cervical sprain/strain must be reversed. Employer further contends that Dr. Manzione testified that Claimant had fully recovered from her January 10, 2008 work-related injury, including the cervical radiculitis and trapezius spasm, and that Claimant's remaining symptoms and limitations were attributable to her underlying degenerative condition. Employer argues that, although Dr. Aland may have contradicted Dr. Manzione, Dr. Aland's opinion was not based on objective evidence because Dr. Aland "admitted that there is no diagnostic study or document to support ongoing irritation to the nerve, agreed [that] the EMG of [Claimant's] upper extremities was normal, and acknowledged that the May 2, 2008 MRI [of Claimant's cervical spine] only showed degenerative changes . . . at multiple levels and . . . no evidence of disc herniations or an acute or traumatic injury." (R.R. at 39.)

18

In response, Claimant argues that the Board properly affirmed the WCJ's decision to deny, in part, Employer's termination petition because the WCJ's findings relative thereto are supported by Dr. Aland's credible testimony. Again, Claimant contends that Employer's appeal is nothing more than an attempt to have this Court reweigh the evidence and make new credibility determinations. Claimant further contends that it is irrelevant that Dr. Manzione's testimony could have supported a finding in favor of Employer with respect to the termination petition because the WCJ thoroughly reviewed the evidence, rendered his credibility determinations, and "meticulously" explained the reasoning behind his credibility determinations and factual findings.

To succeed in a termination petition, the employer bears the burden to prove that the claimant's disability has ceased and/or that any current disability is unrelated to the claimant's work injury. *Jones v. Workers' Comp. Appeal Bd. (J.C. Penney Co.)*, 747 A.2d 430, 432 (Pa. Cmwlth.), *appeal denied*, 764 A.2d 1074 (Pa. 2000). "An employer may satisfy this burden by presenting unequivocal and competent medical evidence of the claimant's full recovery from her work-related injuries." *Westmoreland Cnty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008). Furthermore, in order to terminate benefits, an employer must prove that all of a claimant's work-related injuries have ceased. *Central Park Lodge v. Workers' Comp. Appeal Bd. (Robinson)*, 718 A.2d 368, 370 (Pa. Cmwlth. 1998).

Based upon our review of the record, it is clear to this Court that Employer met its burden of establishing that Claimant had fully recovered from her work-related cervical sprain/strain as of October 23, 2017. Both Dr. Manzione and Dr. Aland, the only medical experts to provide an opinion in this case, agreed that Claimant had fully recovered from the work-related cervical sprain/strain that she

19

sustained on January 10, 2008. As a result, we conclude that the WCJ's contrary finding is not supported by substantial evidence, and we reverse the Board's order to the extent that the Board concluded that Claimant had not fully recovered from her work-related cervical strain/sprain.

We cannot, however, reach the same conclusion with respect to Claimant's cervical radiculitis and trapezius spasm. While Dr. Manzione may have opined that Claimant had fully recovered from her work-related injury as of October 23, 2017, and that any of her remaining symptoms and limitations were attributable to her underlying degenerative condition, Dr. Aland opined that Claimant had not fully recovered from the cervical radiculitis and trapezius spasm that she sustained as a result of the January 10, 2008 work-related incident. As explained more fully above, Dr. Aland's opinion is not in any way discredited by the lack of objective diagnostic studies supporting his conclusion that Claimant sustained work-related cervical radiculitis with resulting trapezius spasm on January 10, 2008, and that Claimant has not fully recovered therefrom. Thus, we are left with competing medical opinions. The WCJ credited Dr. Aland's testimony over Dr. Manzione's testimony, which, as the finder of fact, he was permitted to do. *See Williams*, 862 A.2d at 143. It is, therefore, irrelevant that Dr. Manzione's testimony could support a finding contrary to that made by the WCJ; the only inquiry is whether there is substantial evidence of record to support the WCJ's finding that Claimant had not fully recovered from her work-related cervical radiculitis with resulting trapezius spasm. *See Hoffmaster*, 721 A.2d at 1155. Dr. Aland's credible testimony provides substantial evidence to support that finding. As a result, we conclude that the WCJ's finding that Claimant had not fully recovered from her work-related cervical radiculitis with resulting trapezius spasm is supported by substantial evidence.

20

## C. Credibility Determinations – Dr. Aland and Dr. Manzione

Employer argues that the Board erred by affirming the WCJ's decision because the WCJ should not have credited Dr. Aland's "incompetent, unsubstantiated, and uninformed" opinion over Dr. Manzione's opinion. More specifically, Employer contends that "Dr. Manzione's complete review of Claimant's medical records and the accuracy of his knowledge of Claimant's medical condition . . . far outweighed that of Dr. Aland[,] who admitted to significant and material gaps in his knowledge." (Employer's Br. at 41.) Given those "significant and material gaps in his knowledge," Employer suggests that "Dr. Aland did not gain any superior knowledge as a result of his earlier and more frequent treatment of Claimant, but rather[,] knew less of the entirety of her medical condition than Dr. Manzione." (*Id.*) Employer further contends that "the mere fact" that Dr. Aland may have made "candid concessions" and did not overreach with respect to some issues does not mean that Dr. Aland's opinion on other issues, which are unsupported by Claimant's medical records, should also have been accepted by the WCJ. (*Id.* at 42.) Lastly, Employer suggests that, given that Dr. Aland's and Dr. Manzione's opinions converged on many issues, "there was no reason to credit Dr. Aland['s opinion] over Dr. Manzione['s opinion]." (*Id.*)

In response, Claimant argues that the WCJ's determination to credit Dr. Aland's opinion, as Claimant's treating physician, over Dr. Manzione's opinion, as the IME physician, "would seem especially appropriate here, where the IME took place nearly a decade after the work injury" and Dr. Aland had been treating Claimant since shortly after the January 10, 2008 work-related incident. (Claimant's Br. at 29.) Claimant further contends that, within his credibility determinations, the WCJ specifically addressed the alleged competency "deficiencies" in Dr. Aland's

21

opinion raised by Employer and provided citations to Dr. Aland's testimony where Dr. Aland explained the basis for his opinion that Claimant's cervical radiculitis and trapezius spasm were related to the January 10, 2008 work-related incident and that Claimant has not fully recovered from such injuries.

Employer's attack on the WCJ's credibility determinations is essentially another attempt to challenge the competency of Dr. Aland's testimony. In other words, Employer essentially suggests that the WCJ improperly credited Dr. Aland's testimony over Dr. Manzione's testimony because Dr. Aland's testimony was incompetent. In making this argument, Employer draws this Court's attention to what it has characterized as "significant and material gaps in [Dr. Aland's] knowledge" of Claimant's medical condition—*i.e.*, the fact that Dr. Aland was not aware that Claimant had fallen and broken her wrist in February 2015 and that Dr. Aland did not review any of Claimant's medical records prior to 2013 and had no personal knowledge of Claimant's condition for the first five years following the January 10, 2008 work-related incident. As explained more fully above, Employer's contention relative to Dr. Aland's review of Claimant's medical records and his personal knowledge of Claimant's condition is patently false. In addition, while Dr. Aland may have acknowledged that Claimant's fall in February 2015 could have aggravated her cervical radiculitis and trapezius spasm, Employer has not demonstrated how that acknowledgement would affect Dr. Aland's opinion that Claimant's cervical radiculitis and trapezius spasm is work-related and that Claimant has not fully recovered therefrom. Moreover, contrary to Employer's contentions, there is no evidence of record to suggest that Dr. Aland's opinion is not supported by Claimant's medical records. As set forth more fully above, Dr. Aland credibly and competently testified how, even though there were no diagnostic studies to

22

support his diagnosis, he could conclude that Claimant sustained cervical radiculitis with resulting trapezius spasm as a result of the January 10, 2008 work-related incident. Because matters of credibility are within the exclusive province of the WCJ, we will not reconsider the WCJ's determination to credit Dr. Aland's testimony over Dr. Manzione's testimony.

## D. Reasoned Decision

Employer argues that the WCJ's decision was not reasoned as required by Section 422(a) of the Act, because the WCJ "failed to sufficiently explain his reasoning for crediting the opinion[] of Dr. Aland over [that] of Dr. Manzione, and [the] reasons that the [WCJ] did give lacked an adequate foundation in the record[] or were contradicted by the objective evidence." (Employer's Br. at 43.) In response, Claimant argues that there is ample support in the evidentiary record for the WCJ's credibility determinations and factual findings, and, therefore, the WCJ's decision is reasoned as required by Section 422(a) of the Act.

Section 422(a) of the Act provides, in pertinent part, that all parties in a workers' compensation case are "entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." The decision of a WCJ is "reasoned" if it allows for meaningful appellate review without further elucidation. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). In order to satisfy this standard, a WCJ does not need to discuss every detail of the evidence in the record. *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 194 n.4 (Pa. Cmwlth. 2006), *appeal denied*, 916 A.2d 635 (Pa. 2007). Rather, Section 422(a) of the Act requires a WCJ to issue a reasoned

decision so that this Court does not have to "imagine" the reasons why a WCJ finds the testimony of one witness more credible than the testimony of another witness. *Id.* at 196.

Under Section 422(a) of the Act, a WCJ must articulate the objective rationale underlying his credibility determinations where there is conflicting witness testimony. A WCJ may satisfy the reasoned decision requirement if he summarized the witnesses' testimony "and adequately explained his credibility determinations." *Clear Channel Broad. v. Workers' Comp. Appeal Bd. (Perry)*, 938 A.2d 1150, 1157 (Pa. Cmwlth. 2007), *appeal denied*, 951 A.2d 1167 (Pa. 2008). "Thus, while summaries of testimony alone would be insufficient to satisfy the reasoned decision requirement, where a WCJ summarizes testimony and also objectively explains his credibility determinations, the decision will satisfy the requirement." *Amandeo*, 37 A.3d at 76. In addition, a WCJ cannot simply ignore uncontroverted evidence but, rather, must adequately explain the reasons why he has rejected such evidence. 77 P.S. § 834.

We have reviewed the WCJ's decision and find it more than adequate to satisfy the reasoned decision requirement set forth in Section 422(a) of the Act. In his decision, the WCJ thoroughly summarized both Dr. Aland's and Dr. Manzione's testimony and explained the objective rationale underlying his reasons for crediting Dr. Aland's testimony over Dr. Manzione's testimony. (*See* WCJ's Decision at 8.) In addition, as explained more fully above, the reasons given by the WCJ in support of his determination to credit Dr. Aland's testimony over Dr. Manzione's testimony are not, as Employer suggests, contradicted by the record. For these reasons, we cannot conclude that the WCJ's decision was not reasoned as required by Section 422(a) of the Act.

### E. Counsel Fees

Claimant argues that, because Employer filed this appeal solely to challenge the WCJ's credibility determinations, Employer's appeal is frivolous and, therefore, Claimant is entitled to an award of counsel fees pursuant to Pennsylvania Rule of Appellate Procedure 2744. In response, Employer argues that its appeal is not frivolous because its arguments on appeal "are well-reasoned and complex, . . . are rationally based in the law[,] and have a sound basis in the record facts." (Employer's Reply Br. at 8.) More specifically, Employer contends that, given this Court's standard of review, Employer was permitted to challenge the WCJ's decision on the basis that the WCJ's findings were not supported by substantial, competent evidence of record and/or that Claimant failed to sustain her burden of proof, which Employer suggests is exactly what it has done in this appeal.

Pursuant to Pennsylvania Rule of Appellate Procedure 2744, an appellate court is permitted to award attorneys' fees "if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." The imposition of attorneys' fees under Rule 2744 is solely within this Court's discretion. *In re Appeal of Dunwoody Vill.*, 52 A.3d 408, 424 (Pa. Cmwlth. 2012). "An appeal is considered frivolous if the realistic chances of success are slight and the continuation of the contest is unreasonable." *Waste Mgmt. v. Unemployment Comp. Bd. of Rev.*, 651 A.2d 231, 236 (Pa. Cmwlth. 1994), *appeal denied*, 661 A.2d 876 (Pa. 1995). In the workers' compensation context, an appeal is frivolous if it consists of "nothing more than an invitation to this Court to re-assess the credibility of the witnesses and the weight to be accorded to the evidence." *Newcomer Prods. v. Workers' Comp. Appeal Bd. (Irvin)*, 826 A.2d 69, 75 (Pa. Cmwlth. 2003). "[A]n appeal is not

frivolous merely because it lacks merit." *Dunwoody Vill.*, 52 A.3d at 424. Rather, "the appeal must have no basis in law or fact." *Id.* "Such a high standard is necessary to avoid discouraging parties from bringing appeals due to fear of being sanctioned." *Id.*

While we acknowledge that a large part of Employer's appeal seeks to have this Court reweigh the evidence and overturn the WCJ's credibility determinations, we cannot ignore that Employer's appeal was, in part, successful—*i.e.*, Employer successfully argued that the WCJ's finding that Claimant had not fully recovered from her work-related cervical sprain/strain was not supported by substantial evidence. In addition, we note that, at least on some level, Employer sought to challenge the competency of Dr. Aland's testimony and not merely his credibility. For these reasons, we cannot conclude that Employer's appeal was frivolous, and we, therefore, decline to award Claimant counsel fees pursuant to Pennsylvania Rule of Appellate Procedure Rule 2744.

## IV.  CONCLUSION

Accordingly, we reverse the Board's order to the extent that the Board concluded that Claimant had not fully recovered from the work-related cervical sprain/strain that she sustained on January 10, 2008, and affirm the Board's order in all other respects. We also deny Claimant's request for counsel fees pursuant to Pennsylvania Rule of Appellate Procedure Rule 2744.

P. KEVIN BROBSON, Judge

26

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

General Motors, LLC, :
               Petitioner :
                              :
         v. : No. 299 C.D. 2020
                              :
Workers' Compensation Appeal :
Board (Jegou), :
               Respondent :

# **O R D E R**

AND NOW, this 2nd day of July, 2021, the order of the Workers' Compensation Appeal Board, dated February 24, 2020, is hereby AFFIRMED, in part, and REVERSED, in part, and Petitioner's request for counsel fees pursuant to Pennsylvania Rule of Appellate Procedure Rule 2744 is DENIED.

<br>

                                       P. KEVIN BROBSON, Judge