# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ken Walton General Contractor, :
        Petitioner :
               :
     v. : No. 823 C.D. 2021
               : Submitted March 4, 2022
Patrick Donahue (Workers' :
Compensation Appeal Board), :
         Respondent :

BEFORE:  HONORABLE RENÉE COHN JUBELIRER, President Judge
       HONORABLE ELLEN CEISLER, Judge
       HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE          FILED: May 23, 2022

     Ken Walton General Contractor (Employer) petitions for review of a decision of the Workers' Compensation Appeal Board (Board) affirming a Workers' Compensation Judge's (WCJ) decision to grant a claim petition (Claim Petition) filed by Patrick Donahue (Claimant). Employer contends Claimant was not an employee at the time of the purported work-related injury, thus relieving it of any obligation to pay benefits under the Workers' Compensation Act (Act).[1] Employer also argues the WCJ failed to adequately explain the rationale for her decision that an employment relationship existed between Employer and Claimant, in violation of

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4; 2501-2710.

the Act's requirement that she issue a "reasoned decision."[2]   Finally, Employer claims the WCJ erred in assessing penalty and unreasonable contest counsel fees while simultaneously ruling in its favor on multiple disputed fact issues.   After careful review, we reverse the Board's decision in part and vacate and remand the remainder of the issues for further proceedings.

## I.   BACKGROUND

According to Claimant, August 8, 2017 was his first day of work with Employer. Reproduced Record (R.R.) at 18a.[3]   Before WCJ McCormick,[4] Claimant testified that Ken Walton, owner of Employer (Walton), hired him in a phone conversation the day before. *Id.*  Claimant maintained Walton committed to hiring him "full time," with 40 hours of work per week at a rate of $15.00 per hour.  R.R. at 19a.   Claimant was to report to Walton's home the following day—he and Walton's other employees would then travel to a job site for work on a demolition project.  R.R. at 21a.

Walton also testified before WCJ McCormick.   He flatly contradicted Claimant's account of the August 7, 2017 phone call, stressing that, while he did ask Claimant to visit his home on the 8th, this was only to allow Claimant to fill out a job application and work one or two days on a trial basis.  R.R. at 47a-48a.  Walton testified his policy is to have potential employees accompany him to a job site so he can assess their "skill level" and whether they will "fit" with his team.  R.R. at 47a,

---

[2] *See* Section 422(a) of the Act, 77 P.S. § 834.

[3] Employer is a "general contracting" business engaged in "repairs" and "remodeling." Reproduced Record (R.R.) at 19a, 52a.

[4] This case was originally assigned to WCJ Andrea McCormick before being transferred to WCJ Lawrence Beck.  R.R. at 294a.

50a. In Walton's view, Claimant was injured before that assessment could take place, so he was never employed by Employer. R.R. 53a.

Shortly after Claimant arrived at Walton's home, he injured himself while unloading a children's playhouse from Walton's truck. R.R. at 36a. Specifically, while standing on the side rail of the truckbed, Claimant slipped and fell, landing with his full body weight on his left leg. R.R. at 20a. This resulted in a fracture of the "[d]istal fibula," or "outside ankle bone." R.R. at 99a. Claimant underwent surgery for this injury on August 18, 2017, which consisted of a surgeon attaching a metal plate to Claimant's fibula to facilitate proper healing. R.R. at 99a, 276a, 278a.

The parties dispute why Claimant was unloading the playhouse. Claimant maintains Walton ordered him to unload the playhouse to make room for other work-related items in the truckbed. R.R. at 37a. Conversely, Walton testified that Claimant volunteered to unload the playhouse without any direction to do so. R.R. at 51a-53a.

On September 6, 2017, Claimant filed the Claim Petition, seeking full disability benefits[5] under the Act. R.R. at 1a-5a. On September 20, 2017, Claimant filed a penalty petition (Penalty Petition) seeking monetary penalties against Employer based on Employer's alleged failure to file initial paperwork disputing or acquiescing to the Claim Petition within 21 days, as required by Section 406.1 of the Act[6] and related Department of Labor and Industry regulations. 77 P.S. § 717.1 (a)-(c); *see also* 34 Pa. Code § 121.13 (requiring that, "[i]f compensation is controverted,

---

[5] "Under workers' compensation law, 'disability' is defined as the loss of earning power attributable to the work-related injury." *Weismantle v. Workers' Comp. Appeal Bd. (Lucent Tech.)*, 926 A.2d 1236, 1240 n.10 (Pa. Cmwlth. 2007) (citation omitted). "Full" disability, then, is a complete loss of one's earning power.

[6] Added by the Act of February 8, 1972, P.L. 25.

a Notice of Workers' Compensation Denial . . . shall be sent to the employee . . . and filed with the [Bureau of Workers' Compensation]").  Employer filed responses to both Petitions on September 26, 2017.  R.R. at 9a-14a.  Employer subsequently filed a formal Notice of Compensation Denial with the Bureau of Workers' Compensation (Bureau) on October 6, 2017.  R.R. at 290a.

On August 7, 2018, WCJ McCormick issued an interlocutory order[7] (Interlocutory Order) finding that Claimant was an employee of Employer on the date of the injury and that the injury occurred in the "course and scope" of his employment.  R.R. at 288a.  The cursory Interlocutory Order consists of four numbered paragraphs, only two of which address the legal issues of employment relationship and work-related injury.[8]  *See id.*  Those two paragraphs read as follows:

1. Based upon this Judge's review of Claimant's testimony and the testimony of fact witness, Ken Walton, this Judge finds that Claimant did suffer a work injury on August 8, 2017 and proper notice given [sic] to Employer at that time.

2. This Judge finds further that Claimant was in the course and scope of employ with Mr. Walton at the time of the injury and was not an independent contractor.

R.R. at 288a, Finding of Fact (FOF) 1-2.

With these findings in place, the parties proceeded to litigate the degree of Claimant's impairment and wage loss resulting from the accident.  Claimant presented the deposition of Dr. Michael Troiano (Troiano), a board-certified podiatric surgeon.  Troiano examined Claimant on September 19, 2017 and

---

[7] Prior to transferring the case to WCJ Beck, WCJ McCormick bifurcated the proceedings below into two stages, choosing to address the existence of an employment relationship and a work-related injury before assessing the extent of Claimant's disability and wage loss.  R.R. at 37a-8a.

[8] For brevity's sake, this opinion uses the term "work-related injury" as a synonym for the concept of whether an employee was injured in the "course and scope of his employment."

4

November 16, 2017. R.R. at 295a, FOF 2.b. At the first examination, Troiano found Claimant suffered from range-of-motion issues and calf pain. R.R. at 100a-01a. He recommended physical therapy, which Claimant began before returning for the November 16, 2017 examination. R.R. at 101a. At the November examination, Troiano took X-Rays that revealed Claimant's fracture had healed completely. R.R. at 102a. He noted, however, that serious issues remained with soft tissues and ligaments surrounding the fracture site, and that Claimant was at risk of developing "post-traumatic arthritis" in his ankle. R.R. at 104a. Troiano ultimately opined that Claimant would have permanent range of motion impairment and that he was only capable of returning to sedentary work. R.R. at 106a-07a.

Employer countered with the deposition of Dr. Steven Boc (Boc), who is also a board-certified podiatric surgeon. After examining Claimant on September 6, 2018, Boc found Claimant had normal muscle strength in his left foot and ankle as well as a normal range of motion. R.R. at 157a. Boc also found no "tearing of ligamentous structures" and "no loss of . . . neurological function" in the ankle. R.R. at 158a-59a. Boc noted that Claimant's subjective complaints of pain were inconsistent with his clinical findings. R.R. at 176a-77a. Ultimately, Boc concluded Claimant had fully recovered from his injury as of the date of his examination and could return to work without restrictions. R.R. at 163a-65a.[9]

Regarding Claimant's wage loss,[10] Employer adduced wage records for all employees other than Claimant for several months before and after the injury. R.R. at 298a. In the period before the injury, Employer's employees worked an average

---

[9] Boc also opined Claimant would not require further medical treatment of any kind. R.R. at 165a.

[10] Because Claimant worked, at most, less than one day with Employer, his wage for purposes of benefits under the Act is an average weekly wage multiplied by the number of hours he could reasonably expect to work. *See* Section 309(d.2) of the Act, 77 P.S. § 582(d.2).

of 28.37 hours per week at an average wage of $19.50 per hour. R.R. at 298a, FOF 5.a. In the period following the injury, the employees worked an average of 27.09 hours per week at an average wage of $17.33 per hour. R.R. at 298a, FOF 5.b.

Because the first hearing had focused exclusively on the threshold issues of employment relationship and work-related injury, WCJ Beck held an additional hearing on November 16, 2018. At this hearing, Claimant testified as to the current status of his injury and his efforts to obtain work. Claimant contended that while his symptoms had improved somewhat, he still had significant issues with pain and limited mobility. R.R. at 76a, 83a. Overall, he felt he would never "be the same again" as a result of the injury. R.R. at 80a. At the time of the hearing, however, Claimant had not received any medical treatment for the injury since his November 16, 2017 visit with Troiano. R.R. at 84a. Claimant also testified he was working two part-time jobs as a chef at which he earned between $15 and $18 per hour. R.R. at 77a-8a. Claimant testified he was unable to find construction work because potential employers doubted his fitness to work on account of his ankle injury. R.R. at 77a.

Additionally, during the November 16, 2018 hearing, WCJ Beck stated that he would "need to review the course of employment issue" decided by the Interlocutory Order and ordered the parties to address "any issue that was previously determined via th[e Interlocutory Order]" in their post-hearing briefing. R.R. at 66a.

On September 3, 2020, WCJ Beck issued a final decision (Final Adjudication) granting the Claim and Penalty Petitions. WCJ Beck simply "defer[red]" to WCJ McCormick's conclusions as to Claimant's employment status and the work-related injury, as "Judge McCormick had the opportunity to view [Walton's] testimony live and evaluate his demeanor and deportment[.]" R.R. at 298a, FOF 7. However, WCJ

6

Beck ruled in favor of Employer on many other disputed issues encompassed by the Claim Petition. Specifically, while Claimant contended Employer promised him a 40-hour work week, WCJ Beck found Claimant could only reasonably expect to work 28.37 hours per week, based on Employer's wage records. R.R. at 298a, FOF 6. Additionally, the WCJ rejected Claimant's contention that he was permanently disabled. R.R. at 299a, FOF 9d. Instead, the WCJ found Claimant was totally disabled "from August 8, 2017[,] until June 2018, when he returned to work part-time." *Id.* After that, Claimant was partially disabled until September 6, 2018—the date of Boc's examination—by which time he was fully recovered. R.R. at 299a, FOF 9e. WCJ Beck terminated all benefits as of this date. *Id.*

WCJ Beck also imposed penalties on Employer. In particular, the WCJ ordered Employer to pay "20% of all indemnity benefits, plus interest" as a penalty for not filing a Notice of Compensation Denial within 21 days of Claimant's injury. R.R. at 299a, FOF 10. WCJ Beck also awarded unreasonable contest attorney's fees to Claimant pursuant to Section 440 of the Act,[11] 77 P.S. § 996(a). WCJ Beck found that "Employer's contest was unreasonable until September 6, 2018," the date of Boc's examination. R.R. at 299a, FOF 13. Prior to that, in WCJ Beck's view, Employer defended the claim for benefits "based upon the [asserted] lack of an employment relationship," despite this defense having been rejected in the August 7, 2018 Interlocutory Order. *Id.*[12] Like the other penalty, WCJ Beck fixed the amount of the unreasonable contest award at "20% of all indemnity benefits, plus interest," payable to Claimant's counsel. *Id.*

---

[11] Added by the Act of February 8, 1972, P.L. 25.

[12] WCJ Beck reached this conclusion despite his earlier statement that he would "review the course of employment issue" and receive briefing from the parties thereon. R.R. at 66a.

Employer then appealed to the Board, which affirmed in a divided opinion. R.R. at 323a. This appeal followed.

## II. SCOPE AND STANDARD OF REVIEW

On appeal from a decision of the Board, our scope of review is generally limited to determining whether an error of law was committed, whether constitutional rights were violated, whether the WCJ complied with the procedural rules for agency adjudications found in 2 Pa.C.S. §§ 501-509, 701-704., and whether the WCJ's findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704. This Court applies a *de novo* standard of review to any legal questions. *Bufford v. Workers' Comp. Appeal Bd. (N. Am. Telecom)*, 2 A.3d 548, 551 (Pa. 2010). The existence or absence of an employment relationship is "a question of law based on the facts presented in each case." *Am. Road Lines v. Workers' Comp. Appeal Bd. (Royal)*, 39 A.3d 603, 610 (Pa. Cmwlth. 2012) (citation omitted). The same is true of whether an employee sustained his injury while acting in the "course and scope of his employment." *Holler v. Workers' Comp. Appeal Bd. (Tri Wire Eng'g Sols., Inc.)*, 104 A.3d 68, 70 n.3 (Pa. Cmwlth. 2014).

Furthermore, the imposition of penalties pursuant to Section 435 of the Act,[13] 77 P.S. § 991, is reviewed for abuse of discretion. *City of Phila. v. Workers' Comp. Appeal Bd. (Calderazzo)*, 968 A.2d 841, 850 (Pa. Cmwlth. 2009) (internal citation and brackets omitted). "An abuse of discretion is not merely an error of judgement [sic][.]" *Westinghouse Elec. v. Workers' Comp. Appeal Bd. (Weaver)*, 823 A.2d 209, 213 (Pa. Cmwlth. 2003). Rather, the WCJ abuses her discretion if she overrides the law, reaches a manifestly unreasonable result, or bases her decision on "partiality, prejudice, bias or ill will, as shown by the evidence of record[.]"

---

[13] Added by the Act of February 8, 1972, P.L. 25.

8

*Commonwealth v. Rucci*, 670 A.2d 1129, 1141 (Pa. 1996) (internal quotation marks and citation omitted). Finally, whether an employer's contest of a claim petition is reasonable for purposes of awarding attorney's fees under Section 440 of the Act is a question of law reviewed *de novo* by this Court. *McGoldrick v. Workmen's Comp. Appeal Bd. (Acme Mkts., Inc.)*, 597 A.2d 1254, 1257 (Pa. Cmwlth. 1991).

### III. ISSUES PRESENTED[14]

Employer asks this Court to determine, as a matter of law, that Claimant was never its employee and did not suffer a work-related injury. Employer contends that, at the time of the injury, Claimant's status would be better described as an "applicant going through the hiring process" rather than an "employee." Employer's Br. at 10. Employer also argues the Interlocutory Order was not a "reasoned decision" with respect to these questions, in violation of Section 422(a) of the Act, 77 P.S. § 834. Specifically, Employer argues WCJ McCormick made no effort to explain *why* she ruled in Claimant's favor on these issues, and in simply "deferring" to this determination, WCJ Beck and the Board committed the same error. Employer's Br. at 17-18.

With respect to WCJ Beck's penalty award, Employer argues it was under no obligation to issue a Notice of Compensation Denial because it did not consider Claimant an employee. Employer first became aware that Claimant considered himself an employee entitled to benefits when Claimant filed the Claim Petition on September 6, 2017. Employer argues it responded promptly to the Claim Petition by filing an Answer on September 26, 2017, and that such Answer should be treated

---

[14] On October 6, 2021, Claimant filed a notice with this Court electing not to participate in this appeal. Therefore, we address the arguments of Employer, alone, with respect to the legal issues raised.

9

as the equivalent of a Notice of Compensation Denial. In any event, Employer filed an official Notice on October 6, 2017, less than two months after Claimant's injury.

Regarding WCJ Beck's award of attorney's fees, Employer argues the reasonableness of its dispute is conclusively shown by the fact that WCJ Beck ultimately ruled in its favor on the issues of Claimant's expected work hours, wages, and whether he is permanently disabled.

We address these issues in turn.

## IV. DISCUSSION

### A. WCJ Beck and the Board erred in deferring to WCJ McCormick's Interlocutory Order, as it was not a reasoned decision.

Though Employer urges us to opine on Claimant's employment status at the time of his injury, we are unable to do so without a "reasoned decision" to review. Section 422(a) of the Act provides:

> All parties to an adjudicatory proceeding [under the Act] are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which **clearly and concisely states and explains the rationale** for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834 (emphasis added). This Section imposes a series of interrelated obligations that, taken together, constitute the "reasoned decision" requirement for workers' compensation judges. The aim of these requirements is to combat arbitrary

10

decision making by mandating a certain minimum level of elaboration on specific issues that frequently arise in proceedings under the Act. While Section 422(a) does not require that workers' compensation judges issue "well[-]reasoned" opinions, *Green v. Workers' Compensation Appeal Board (U.S. Airways)*, 28 A.3d 936, 940 (Pa. Cmwlth. 2011), it does demand they state a discernible rationale for their decisions which "allows for meaningful appellate review without further elucidation." *ICT Grp. v. Workers' Comp. Appeal Bd. (Churchray-Woytunick)*, 995 A.2d 927, 932 (Pa. Cmwlth. 2010) (citation omitted).

Three specific aspects of the reasoned decision rule are implicated here. First, the WCJ has a "duty to make 'crucial findings of fact on all essential issues necessary for review by the Board and this Court.'" *Ingrassia v. Workers' Comp. Appeal Bd. (Universal Health Servs., Inc.)*, 126 A.3d 394, 403 (Pa. Cmwlth. 2015) (quoting *Pistella v. Workmen's Comp. Appeal Bd. (Samson Buick Body Shop)*, 633 A.2d 230, 234 (Pa. Cmwlth. 1993)).[15] Second, the WCJ must provide a reasonable explanation for determinations of witness credibility. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052-53 (Pa. 2003). When the WCJ has the opportunity to observe the relevant testimony live, this explanation may consist of a simple statement that a particular witness is deemed credible or incredible based on the WCJ's observation of his or her demeanor. *Id.* Finally, the reasoned decision rule imposes an overarching obligation to "explain . . . the rationale for the decision . . . so that all can determine why and how a particular result was reached." 77 P.S. § 834. It is not sufficient for the WCJ to merely summarize the evidence before her in a particular case; rather, she must articulate at least a modicum of reasoning which bridges the evidence and her conclusions. *See Daniels*, 828 A.2d at 1054 (holding

---

[15] This sub-rule stems from Section 422(a)'s explicit command that WCJs must 1) state specific "findings of fact," and 2) "specify the evidence upon which [they] rel[y]." 77 P.S. § 834.

that WCJ's extensive summary of witnesses' testimony was no substitute for an "objective basis for deeming" one witness "more credible and persuasive" than another).

WCJ McCormick's Interlocutory Order falls short of all three of these requirements. First, there are no findings of fact whatsoever in the two relevant paragraphs[16] of the Order. *See* R.R. at 288a. While Section 422(a) does not require a WCJ to engage in a "line-by-line analysis of each statement by each witness . . . [to] explain . . . how a particular statement affected the ultimate decision," *Acme Markets, Inc. v. Workers' Compensation Appeal Board (Brown)*, 890 A.2d 21, 26 (Pa. Cmwlth. 2006), there must be some discussion of the relevant testimony, even if only to briefly paraphrase the salient portions thereof. *See Sherrod v. Workmen's Comp. Appeal Bd. (Thoroughgood, Inc.)*, 666 A.2d 383, 386 (Pa. Cmwlth. 1995) ("A reasoned decision is a decision which sets forth the essence of the testimony which the [WCJ] found credible."). WCJ McCormick's cursory statement that she performed a "review of Claimant's testimony and the testimony of fact witness, Ken Walton," does not meet this standard. R.R. at 288a, FOF 1.

The Board held this statement constituted a credibility determination based on WCJ McCormick's assessment of the witnesses' demeanor. R.R. at 320a-21a. In reaching this conclusion, the Board pointed to WCJ Beck's statement in the Final Adjudication that "Judge McCormick had the opportunity to view [] Walton's testimony live and evaluate his demeanor and deportment prior to rendering her [Interlocutory Order]." R.R. at 298a, FOF 7. While this statement is true insofar as it goes, merely observing a witness testify is not a substitute for a written credibility

---

[16] As noted above, the Interlocutory Order consists of four numbered paragraphs overall. *See* R.R. at 288a. Paragraphs 1-2 pertain to the issues discussed here. Paragraphs 3-4 prescribe certain procedures for the parties to follow in litigating Claimant's wage loss and "ongoing disability," including directing the parties to participate in mediation. R.R. at 288a, FOF 3-4.

12

determination. To be sure, pursuant to *Daniels*, a WCJ may justify a credibility determination by stating such determination is based on an assessment of the relevant witness's demeanor. 828 A.2d at 1052-53. However, in this case, WCJ McCormick did not even do that. As Employer correctly argues, "[n]either [WCJ] McCormick nor [WCJ] Beck specifically found any witness to be credible or non-credible on the issue of employment relationship." Employer's Br. at 17. Thus, while WCJ Beck claimed to "defer" to WCJ McCormick's credibility findings, in reality, no such findings existed. R.R. at 298a, FOF 7. The Interlocutory Order does not state whether WCJ McCormick chose to credit either Claimant or Walton's testimony, nor does it identify which portion of either witness's testimony supported its conclusions that Claimant was employed by Employer and suffered a work-related injury. While it is possible to reason backwards from the WCJ's ultimate conclusion to *infer* which witness and which specific statements were deemed credible, the necessity of such an exercise is precisely what indicates the Interlocutory Order is not "reasoned" within the meaning of Section 422(a) of the Act. A WCJ's decision is only "reasoned" in this sense "if it allows for meaningful appellate review *without further elucidation.*" *ICT Grp.*, 995 A.2d at 932 (emphasis added) (citing *Daniels*, 828 A.2d at 1052).[17]

---

[17] The Board attempted to construe the Interlocutory Order as indicating the kind of demeanor-based assessment of witness credibility permitted by *Daniels*, *see* R.R. at 320a, but the Board's own language betrays the impossibility of such a conclusion. At multiple junctures, the Board revealed it was unsure which witness—either Walton or Claimant—WCJ McCormick chose to credit. *See* R.R. at 319a (holding Claimant met his burden "based on the credited testimony of Claimant *and* [Employer's] owner") (emphasis added); R.R. at 320a ("[Employer] requests a longer explanation as to why WCJ McCormick credited the testimony of Claimant *and* [] Walton[.]") (emphasis added). It would not be impossible for the WCJ to find an employment relationship existed between Claimant and Employer based on selected portions of each witness's testimony, but accomplishing that would require specification of what those portions were, something that is clearly absent from the Interlocutory Order.

13

Lastly, and perhaps most fundamentally, the Interlocutory Order is not a reasoned decision because it offers nothing more than bald conclusions on the legal issues of employment relationship and work-related injury. A workers' compensation claimant's "employment status is a critical threshold determination for liability" that requires application of a multi-factor test. *Am. Road Lines*, 39 A.3d at 610-11. Likewise, determining whether a claimant's injury was sustained "in the course and scope of his employment" requires analysis of whether, at the time of the injury, the claimant was "actually engaged in the furtherance of the business or affairs of the employer" within the meaning of Section 301(c) of the Act, 77 P.S. § 411(1). *See Olszewski v. Workmen's Comp. Appeal Bd. (Royal Chevrolet & Am. Fire & Cas.)*, 648 A.2d 1255, 1257 (Pa. Cmwlth. 1994). The Interlocutory Order contains no discussion whatsoever on either of these issues. As such, it fundamentally fails to "explain how and why . . . [its] particular result was reached," as required by Section 422(a). *See* 77 P.S. § 834.[18]

Without a reasoned decision to examine, we are unable to engage in "meaningful appellate review." *Id.* Therefore, we vacate that portion of the Board's decision affirming the WCJ's decision that Claimant was employed by Employer and that Claimant suffered a work-related injury, and remand to the Board with instructions to direct the WCJ to issue a reasoned decision with respect to these issues.[19]

---

[18] This failure is amplified by the unusual facts of this case, under which the determinations of Claimant's employment status and the work-relatedness of his injury are no simple task.

[19] Consistent with this holding, we also vacate WCJ Beck's award of Claimant's litigation costs. *See* R.R. at 299a, FOF 11. This award was clearly tied to the WCJ's decision to grant the Claim Petition. *See* Section 440 of the Act, added by Act of February 8, 1972, P.L. 25, No. 12, 77 P.S. § 996 (providing for award of litigation costs where a claimant prevails in a contested case).

14

**B. The Board erroneously affirmed the WCJ's decision to assess penalties and unreasonable contest attorney's fees against Employer.**

As noted above, WCJ Beck assessed two substantial fees against Employer, both in the amount of 20% of all indemnity benefits awarded to Claimant, plus interest. One fee was based on Employer's failure to file a Notice of Compensation Denial within 21 days of Employer's knowledge of Claimant's injury. *See* 34 Pa. Code § 121.13. The other was based on Employer's purported "unreasonable contest" of the Claim Petition on grounds that were resolved by the Interlocutory Order. R.R. at 299a, FOF 13. Both these awards were made in error, and the Board erred in affirming them.

The imposition of penalties and fixing the amount thereof pursuant to Section 435 of the Act, 77 P.S. § 991, are matters committed to the discretion of the WCJ. *Calderazzo*, 968 A.2d at 850. That discretion, however, is not without limits. Where the WCJ "reaches a manifestly unreasonable result," we need not defer to his discretionary determination. *Rucci*, 670 A.2d at 1141.

WCJ Beck's penalty award is manifestly unreasonable. Pursuant to 34 Pa. Code § 121.13, Employer's Notice of Compensation Denial was due 21 days after Employer's first notice of Claimant's injury. Because Employer's owner witnessed the injury occur on August 8, 2017, Employer was on notice as of that date. Thus, Employer had until August 29, 2017 to send a Notice of Compensation Denial to Claimant and the Bureau. 34 Pa. Code § 121.13. Employer filed its Notice of Compensation Denial on October 6, 2017, or 38 days past the deadline. R.R. at 290a. However, Employer filed an Answer to the Claim Petition on September 26, 2017, which presented the basis for Employer's denial of compensation in essentially the same manner as a Notice of Compensation Denial. *Compare* R.R. at 9a (Employer's Answer) (stating "[n]o employment relationship" as basis for

defense) *with* R.R. at 290a (Employer's Notice of Compensation Denial) (stating "Claimant not an employee at time of injury" as basis for denial of benefits). Furthermore, Employer's Answer indicated its "first notice" of Claimant's view that he had suffered a compensable injury was the filing of the Claim Petition on September 6, 2017. R.R. at 9a.

Under these circumstances, no discernible prejudice to Claimant resulted from Employer's delay in filing the Notice of Compensation Denial. Employer's untimely filing, therefore, is at worst a technical violation of the Act. A penalty is not required every time a violation is established. *Galizia v. Workers' Comp. Appeal Bd. (Woodloch Pines, Inc.)*, 933 A.2d 146, 154 (Pa. Cmwlth. 2007). In spite of this, WCJ Beck awarded a penalty of 20% of the entirety of Claimant's wage loss benefits in this matter, meaning all wages to which he was entitled from August 8, 2017, to September 6, 2018.[20] This penalty is grossly disproportionate to Employer's violation, which caused no prejudice to Claimant, who had already filed the Claim Petition by the time he received the Notice of Compensation Denial. As such, we find that WCJ Beck's penalty award was "manifestly unreasonable" and thus an abuse of discretion.

Unlike penalties, awards of attorney's fees pursuant to Section 440 of the Act, 77 P.S. § 996, are subject to *de novo* review by this Court. *McGoldrick*, 597 A.2d at 1257. WCJ Beck's basis for awarding attorney's fees to Claimant was Employer's purportedly "unreasonable" contest of the Claim Petition "based upon the lack of an employment relationship," even though the issue of employment relationship had

___

[20] As noted, WCJ Beck determined Claimant was totally disabled from August 8, 2017, to "June 2018, when he returned to work part-time," and partially disabled from June 2018 to September 6, 2018. R.R. at 299a, FOF 9d. Thus, Employer was ordered to pay 20% of over one year's worth of wages, plus interest, as punishment for a delay of 28 days in submitting initial paperwork relating to Claimant's injury.

16

already been decided by the Interlocutory Order.  R.R. at 299a, FOF 13.  This reasoning fails on multiple levels.  First, it is obvious from the Final Adjudication that Employer legitimately contested issues other than the existence of an employment relationship between Claimant and Employer.  WCJ Beck actually *ruled in Employer's favor* on the disputed fact issues of Claimant's average weekly wage and whether he is permanently disabled.  *See* R.R. at 299a, FOF 9b-e.[21] Furthermore, even if Employer's contest had been exclusively focused on the issue of employment relationship, WCJ Beck told the parties at the November 16, 2018 hearing that he would entertain additional argument on this issue and "any [other] issue that was previously determined via th[e Interlocutory Order]".  R.R. at 66a.  In taking up this invitation, Employer cannot have presented an "unreasonable contest" justifying the award of attorney's fees.  Accordingly, we reverse WCJ Beck's unreasonable contest award.


_____
STACY WALLACE, Judge

Judge Fizzano Cannon did not participate in the decision of this case.
Judge Dumas did not participate in the decision of this case.

---

[21] On the latter issue, Employer went to the trouble of retaining and deposing Boc, who opined on Claimant's recovery and the possibility of any ongoing impairment.  *See* R.R. at 213a-46a.  This clearly had nothing to do with the existence of an employment relationship.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ken Walton General Contractor,       :
                     Petitioner      :
                                    :

         v.                       :      No.  823 C.D. 2021
                                    :

Patrick Donahue (Workers'         :
Compensation Appeal Board),     :
                     Respondent     :

## **O R D E R**

**AND NOW**, this 23rd day of May 2022, the June 29, 2021 Order of the Workers' Compensation Appeal Board is hereby **REVERSED IN PART AND VACATED AND REMANDED IN PART**. We reverse the portion of the Order affirming Workers' Compensation Judge Lawrence Beck's decision to grant Claimant Patrick Donahue's (Claimant) Penalty Petition as well as the portion of the Order affirming Judge Beck's assessment of unreasonable contest attorney's fees and costs of litigation against Employer Ken Walton General Contractor (Employer). We vacate the portion of the Board's Order affirming Judge Beck's decision to grant Claimant's Claim Petition, which was based on Judge Beck's decision to "defer" to the findings contained in the August 7, 2018 Interlocutory Order entered by Workers' Compensation Judge Andrea McCormick, and remand the matter to the Board with instructions to further remand this case to a workers' compensation judge for issuance of a reasoned decision with respect to the issues of whether an employment relationship existed between Employer and Claimant at the time of the injury, and, if so, whether Claimant's injury occurred in the course of

that employment within the meaning of Section 301(c) of the Pennsylvania Workers' Compensation Act.[1] On remand, the workers' compensation judge shall have discretion regarding whether to receive additional evidence or testimony concerning these issues.

Jurisdiction relinquished.

_____
STACY WALLACE, Judge

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1).